CARTER, executrix, *et al. vs.* HALLAHAN *et al.*

1. Mortgagees cannot set up title from the deceased mortgagor to a third person for the purpose of defeating the widow's claim of dower and year's support.
2. Where a debtor, since deceased, gave to a creditor a deed, absolute upon its face, but remained in possession of the property; in a subsequent contest between other creditors and the widow claiming dower and year's support, parol evidence was admissible to show that the conveyance was only intended to operate as a mortgage.
3. The verdict was in accordance with the evidence.
   See concurrence of BLECKLEY, Justice.

Mortgage.   Title.   Dower.   Estoppel.   Evidence.   New trial.   Before Judge POTTLE.   Richmond Superior Court. April Term, 1878.

William H. Goodrich, as receiver of the estate of De-Laigle, by deed, dated April 10th, 1869, conveyed the homeplace, with the brickyard and other lands adjacent, to Denning & Hallahan, who executed a mortgage the same day, for $22,000, the balance of the purchase money.   Denning sold out to Hallahan, July 20, 1870, subject to the mortgage who, on the same day, conveyed the premises to James A. Gray, with the privilege of re-purchase.   Gray re-conveyed

to Hallahan Jan. 16, 1872, on which day Hallahan executed a mortgage on the land to Flournoy Carter for $10,735. On Jan. 18, 1872, the mortgage originally due to Goodrich, receiver, was paid off and satisfied of record. On the 7th Jan., 1873, Hallahan executed a second mortgage, in favor of the Augusta Factory, for $4,000, the Georgia Railroad & Banking Co., Francis Cogin, and George T. Jackson, for $2,000 each, with interest from maturity at 10 per cent., and attorneys' fees in case of foreclosure. This was on the same real estate, with the personal property at the brickyard, and recited notice of the Carter mortgage for $9,500. On the 23d April, 1873, Hallahan executed a third mortgage, in favor of O'Donnell & Burke, E. O'Donnell and Frank H. Miller, to secure indebtedness to O'Donnell & Burke, and O'Donnell of $6,038, and Miller of $1,000. This mortgage was on the same real estate and personal property as the second mortgage, and recited notice of the first and second mortgages.

To October term 1873, of Richmond superior court, all the mortgagees filed petitions to foreclose their mortgages. On the 2d Feb., 1874, Hallahan conveyed to Burke, for $1,500, all the real and personal property described in the mortgages. A note for the $1,500 was given. Notice was given in the deed of the prior mortgages and liens. Advertisements of the sale were published. A rent note was given by Hallahan for the dwelling-house, and a paper signed by him as follows :

"I, Dennis Hallahan, hereby agree to serve James Burke as clerk in the brickyard sold by me this day to him, at the rate of five dollars per day, from which is to be deducted any day or portion thereof which I fail to serve, he having the right to discharge me at the end of any day.                                   DENNIS HALLAHAN."

February 2, 1874.

A new bond for the maintenance of certain convicts then in the employ of Hallahan was given by Burke to the county judge. In January, 1877, Burke declined to make further payments, and offered to convey the property back

20

to Hallahan, his note, due February 2, 1877, for $1,500, to be returned to him. The deed was drawn but not executed.

At April term, 1874, of Richmond superior court, the mortgages were all foreclosed, executions issued, and levies were made on the property, notice being served on Burke as tenant in possession. Burke obtained an extension of time on the executions by paying interest; and afterwards a second extension until January 1, 1877.

Hallahan was adjudged a bankrupt February 28, 1877, and died April 6, 1877.

In June, 1877, his widow and children brought this bill. At the same time, they filed their petition for a year's support; $3,500.00 was set apart to them. Carter being dead, his interests were represented by Mrs. Carter, executrix.

After decree against them, defendants moved in arrest of judgment and for a new trial. Both motions were overruled, and they excepted.

Among the many grounds of error alleged, are these:

1. Because the court failed to hold that the conveyance of February 2, 1874, even if an equitable mortgage, passed the title so as to prevent dower until all the debts intended to be secured thereby were paid.

2. Because the court admitted, over the objection of defendants, the verbal testimony of Edward O'Donnell, of a conversation had with him by his brother-in-law, Dennis Hallahan, prior to the deed of February 2, 1874, showing what his understanding was with Hallahan, and which he, O'Donnell, communicated to Burke before the making of the deed, but which was not communicated to the conveyancer who drew the papers, or any creditor.

3. Because the court admitted, over the objection of defendants, the verbal testimony of Burke, of a conversation had with O'Donnell, in the absence of Hallahan, about making the deed of February 2, 1874, and also refused to rule it out after it appeared from Burke's testimony that he had, after the deed, made on two occasions

written settlements with Hallahan of a contradictory character.

For the other facts see the decision.

BARNES & CUMMING; F. H. MILLER for plaintiffs in error, cited (on the points decided) as follows : Dower allowed in what, Code, §1763; 15 *Ga.*, 102; 28 *Ib.*, 107; 40*Ib.*, 32; 28 *Ib.*, 479; 43 *Ib.*, 385; 37 *Ib.*, 490; 66 N. C., 214; 1 Bump. 497; 44 *Ga.*, 323; 60 *Ib.*, 456. Deed to Burke good against dower, whether a mortgage or not, 15 *Ga.*, 102; 28 *Ib.*, 108; 59 *Ib.*, 507; 54 *Ib.*, 45; 49 *Ib.*, 140; 57 *Ib.*, 601; 46 *Ib.*, 133; 58 *Ib.*, 178; 32 *Ib.*, 665; 56 *Ib.*, 250; 40 *Ib.*, 540; 54 *Ib.*, 621; 13 *Ib.*, 88; 59 *Ib.*, 862; 60 *Ib.*, 456; 38 *Ib.*, 452, 597; 30 *Ib.*, 714; 45 *Ib.*, 486, 497; 53 *Ib.*, 585; 46 *Ib.*, 101; 44 *Ib.*, 318. Parol evidence inadmissible, Code, §§3806, 3809; 54 *Ga.*, 527; 59 *Ib.*, 562.

H. CLAY FOSTER; T. H. GIBSON; JOHN T. SHEWMAKE; M. P. Carroll, for defendants, cited as follows : Liens not bar dower, 1 Bish. on Married Women, §§315, 325, 326; Cobb's Dig., 171-9; 28 *Ga.*, 478; 43 *Ib.*, 383; 37 *Ib.*, 492; 4 Kent's Com., 48; 38 *Ga.*, 1; Code, §1763; 3 Wait's Actions and Defenses, 658 : 3 Heisk., 395,565; 4 Kent's Com., 45-6, 159-161; 14 Me., 200; 14 Mass., 351; Scribner on Dower, 259-267; 25 Me., 101; Burke's title not absolute, 4 Kent's Com., 142; 2 Story's Eq. Jur., §1018; 49 *Ga.*, 514; 55 *Ib.*, 653. Mortgagees estopped from denying mortgagor's title, 10 *Ga.*, 321; 4 Kent, 38; 55 *Ga.*, 613; Herman on Est., 610; 1 Bish. on Married Women, §§316, 317; 52 *Ga.*, 106; 2 Richardson, 521; 2 Scribner on Dower, 217 *et seq.*

WARNER, Chief Justice.

This was a bill filed by the complainants against the defendants who held mortgages on certain described lands which had been mortgaged by Hallahan in his lifetime, and in which Mrs. Hallahan, as the widow of her deceased hus-

band, claimed dower, and also claimed in behalf of herself and children a year's support. The bill prayed for an injunction on the allegations contained therein until the final hearing of the cause, which was granted. On the trial of the case, the jury were instructed by the court to pass upon and decide the following issues of fact, which they did, with the name of their foreman affixed thereto: 1. Did the deed of 2d of February, 1874, from Hallahan to Burke, make an absolute sale of the land, or was it the intention of the contracting parties at the time, that Hallahan had the right to redeem the property by paying the purchase money, and was or not that deed made in pursuance of a verbal agreement to redeem on the payment of the purchase money? Ans—We find the deed to be nothing more nor less than an equitable mortgage. 2. How much, if any, of the purchase money was paid by Hallahan in his life-time, or after his death for him, to Burke? Ans—Nothing paid. 3. How much is now due to Burke, or O'Donnell & Burke, from Hallahan or his estate? Ans—Nothing, they having relinquished their claim. 4. Has Burke, or O'Donnell & Burke, now any claim on Hallahan's estate growing out of the deed transaction, and did he, Burke, release the estate from all liability to him or them? Ans—We find none, Jas. Burke and O'Donnell & Burke having relinquished all claims against the estate. 5. Who had possession of the land at the time of the death of Dennis Hallahan? Ans—Dennis Hallahan was in possession at the time of his death. 6. Who had possession of the land from the date of the deed to the time of Hallahan's death, or was there any change in that possession after Hallahan first acquired it? Ans—Dennis Hallahan was in possession, and no change was made. 7. Does Jas. Burke owe any part of the $1,500 note? Ans— He does not. 8. What was the consideration of that note? Ans—To be surrendered to Jas. Burke upon a reconveyance of the property to Dennis Hallahan. 9. What was the consideration of the deed of 2d of February, 1874? Ans—To pay the debts due Jas. Burke, Ed. O'Donnell, and O'Don-

nel & Burke? 10. Did Hallahan hold out Burke as the owner of the land, or did Burke hold himself out as such owner with Hallahan's knowledge or consent? Ans—Yes, Hallahan did, and also Burke, with Hallahan's consent. 11. Did Mrs. Carter deal with Burke as the true owner and refrain from selling the land when the same was about to be sold under levy? Ans—We believe she did. 12. Was the money borrowed by Hallahan from Carter to secure which the mortgage of the 16th of January, 1872, was executed by Hallahan in favor of Carter, borrowed for the purpose of paying off the purchase money of the land for which the mortgage in favor of W. H. Goodrich, receiver, was given, and to pay Jas. A. Gray? Ans—We believe it was. 13. Did Hallahan know of any arrangement made by Burke for payment on the mortgage? Ans—We believe he did. 14. Was the division of the land and the assignment of the dower to Mrs. Hallahan a fair one according to the valuation of the property? Ans—We think it was. 15. Was the allowance made for twelve months' support excessive, and if so, how much? Ans—We think it excessive, and decree the sum of $1,800 as sufficient for one year's support.

Upon this finding of the jury the court entered the following decree : " The jury on the trial of the facts of this case, having found by their verdict that Dennis Hallahan died in the possession of the land out of which the dower is claimed, that his possession then was the same that it was from the time of the purchase from Goodrich, receiver, and having found that the deed from Dennis Hallahan to Jas. Burke, of the 2d of February, 1874, was but an equitable mortgage, and having found that nothing is due to Burke, the vendee, of the purchase money, he having released all claim on the estate or the widow, and having found that a proper allowance to the widow and minor children for twelve months' support is $1,800, it is decreed that the complainant is entitled to dower in the lands of said Dennis Hallahan, that the report of the commissioners admeasur-

ing dower be confirmed, the assignment having been found to be fair, and that the said widow will be allowed to enter and remain upon said lands so set apart as dower free from any incumbrances, and that she do recover out of the funds in hand belonging to said estate the sum of $1,800 for the use of herself and minor children; that the judgment of Martha Carter be enjoined from proceeding against the dower lands until the determination of the dower estate, unless the plaintiff choose to sell the land subject to the right of dower, and that the funds in the hands of the sheriff arising from the sale of the land, after deducting costs of suit and expenses of sale, be paid over to the *fi. fas.* according to their priority. It is further decreed that the taxes due on said land be paid ratably, the dower estate paying one-third."

A motion was made to set aside the finding of the jury and the decree of the court thereon, and for a new trial, on various grounds stated therein, which was overruled, and the defendants excepted.

It appears from the evidence in the record, that the complainant is the widow of Dennis Hallahan, deceased, and had six minor children at the time of his death; that in April, 1869, the premises on which the dower is claimed was conveyed by deed to her deceased husband by Goodrich, as receiver of the estate of DeLaigle, and that he had been in possession thereof about nine years prior to and at the time of his death in April, 1877. It also appears from the evidence, that on the 20th of July, 1870, Hallahan conveyed the premises by a deed absolute on its face to Jas. A Gray, which deed Gray states was only an equitable mortgage, and it also appears that Gray, on the 16th of January, 1872, conveyed the title by a quit-claim deed back to Hallahan. It further appears that on the 16th of January, 1872, Hallahan executed a mortgage on the premises to Carter, and subsequently executed two other mortgages to the mortgagees therein named, upon the same property. It is further shown by the evidence in the record, that on the 2d day of February, 1874, Hallahan conveyed the premises by

deed to Burke, subject to the aforesaid mortgage liens, which deed from Hallahan to Burke, the jury have found by their verdict, was nothing more than an equitable mortgage, so that the liens of the prior mortgagees on the property are not in any manner impaired by Burke's junior equitable mortgage upon the same property.

The respective mortgagees on Hallahan's property, have got all the liens thereon which they contracted for, wholly unaffected by Burke's junior equitable mortgage. What then is this case when stripped of all the artificial legal toggery which has been so industriously thrown around it ? It is an effort on the part of the mortgagees to convert the somewhat questionable transaction between Hallahan and Burke, into an absolute legal conveyance of the title to the property from Hallahan to Burke, not for the purpose of protecting their own mortgage liens, but for the purpose of defeating the widow's legal claim to dower and twelve months' support out of her deceased husband's estate. It is true the mortgagees complain of a great many errors having been committed on the trial in the court below, but the most substantial cause of complaint probably is, that Providence removed Hallahan by death before their mortgage debts were paid, and as a consequence thereof, the laws of the land gave to his widow a superior lien for her dower and year's support out of his estate to *their mortgage liens.*

The parol evidence was admissible to show that the deed from Hallahan to Burke was intended to operate as a mortgage only—Hallahan having remained in possession of the property. Hallahan, the mortgagor, did not obtain his title to the property from either of the mortgagees, and therefore the question of purchase money as between mortgagor and mortgagee was not in the case. Besides the mortgagees recognized the title of Hallahan, the mortgagor, to the property embraced in their respective mortgages, and were estopped from denying it. 55 *Ga.,* 613.

The fair presumption is that the jury took into consider-

ation the support of the widow and children on the place, inasmuch as they reduced the amount to $1,800, assuming that to be a question which concerned the mortgagees. Whatever errors may have been committed on the trial, the verdict and decree are right, under the evidence, upon the main question in the case and the law applicable thereto, and we will not disturb them.

Let the judgment of the court below be affirmed.

BLECKLEY, Justice, concurring.

The ground of my concurrence as to the dower, is that the mortgagees cannot invoke an outstanding title in which they are not interested, to defeat dower in favor of the mortgagor's widow. This reason applies both to Burke's claims and to the alleged title in the assignee of the mortgagor in bankruptcy. The assignee is not asserting any title to the premises, nor do the mortgagees claim under this assignment. Burke has voluntarily relinquished his title if he ever had any.