Bateman *et ux. vs.* Archer.

---

BATEMAN *ct ux. vs.* ARCHER.

1. Where a debtor executed to his creditor an absolute deed to land, taking from him an agreement in writing to relinquish all claim thereto on the payment at a specified time of a certain sum of money, and this agreement was canceled and renewed from year to year at each time the payment should have been made by the debtor, a bill in equity by the creditor, recognizing the deed as an equitable mortgage, and praying that upon the failure of the defendant to pay the amount due, that his equity of redemption be forever barred and foreclosed, was not demurrable upon the ground that the complainant had an ample common law remedy. The contracts to relinquish by the creditor, being executed at different times from the deed, were not such defeasances as would constitute it a mortgage which could be foreclosed at law.

2. The money to secure which the deed was executed having been borrowed by the debtor to purchase the very land thereby conveyed, there was certainly abundant equity in the bill. The debtor cannot retain both the money and the land.

Equity. Mortgage. Debtor and creditor. Before Judge JOHNSON. Washington Superior Court. September Term, 1879.

Reported in the decision.

JAMES K. HINES; C. C. BROWN, by Z. D. HARRISON, for plaintiffs in error.

B. D. EVANS, for defendant.

CRAWFORD, Justice.

The record shows that William Archer loaned to G. W. Bateman and his wife $1200.00 on the thirteenth day of December, 1869, and took as security therefor a deed to 302½ acres of land; it also appears that he agreed in writing, December 15th, 1869, and entered the agreement on the back of said deed, that if the said Bateman would pay him on the twenty-fifth day of December, 1870, $1392.00 he would relinguish all claim to the land to the said Bateman and wife. This agreement was canceled on the day for the payment of the money, and another of like character made, but no money being paid it was repeated from year to year until February 12th, 1875.

It also appears that on the first day of February, 1870, he loaned to Bateman the further sum of $400.00, and took a deed to 218¾ acres of other land to secure its payment, upon which deed there was an indorsement similar to that upon the first mentioned deed, except that it was for the sum of $538.00, to be paid on the twenty-fifth day of December, 1871, and if paid he was to relinquish all his claim to the land so conveyed. The money not being paid at the time named a cancellation of that agreement followed, and a renewal thereof for another year was made, and thus from year to year it too was continued to February 12th, 1875.

On this date another written agreement covering both loans and both tracts of land was entered into, whereby if the said Bateman should pay on the twenty-fifth day of December, 1875, certain amounts specified in the contract, that then the said Archer was to relinquish all claims to the land which had been so conveyed.

No payment was made on this last mentioned date, and the said Archer recognizing his deeds under the contract as being nothing more than equitable mortgages, filed his

bill in equity, setting up the foregoing facts and praying that upon the failure of the defendants to pay the amount of money due upon the same, that their equity of redemption be forever barred and foreclosed.

To this bill the defendants filed a general demurrer, upon the grounds that the complainant had an ample common law remedy, and that there was no equity in the bill. The judge overruled the demurrer, and this decision is assigned as error.

1. We do not see that the complainant did have an ample common law remedy; these deeds were absolute and unconditional, and expressed the consideration of $1,200.00 in one and $400.00 in the other, and the bill alleged that there were written agreements made as hereinbefore stated, but the two papers, when taken together, do not constitute legal mortgages ; the contracts to relinquish were at different times entered into, possibly affected by different laws, and hence a court of equity was a proper forum to pronounce upon such contracts and construe their tenor and effect. *At law*, to make such papers mortgages, the contract to reconvey to make it a defeasance, should be executed simultaneously with the conveyance, and as a part of the same transaction, and must be under seal. *In equity*, written or parol evidence which clearly shows that the conveyance was intended but as a security, will make the transaction a mortgage. Jones on Mort., §257; Story Eq. Juris., §1018. A court of law being unable to foreclose a mortgage on account of some informality necessary to constitute it such, the same will nevertheless be regarded as an equitable mortgage, and the lien will be enforced by proceedings in equity. Jones on Mortgages, §168.

2. That there is equity in this bill we can entertain no doubt. By this demurrer the defendants admit that they received $1,200.00 in gold on the thirteenth day of December, 1869, with which to pay for this identical land upon which they have lived ever since, failing and refus-

ing to pay, notwithstanding their promises and agreements to do so from year to year. And they further admit that they received $400.00 more in gold and silver on the first day of February, 1870, with which to pay for the second piece of land conveyed to the complainant, and although promising from year to year to pay the same, have failed and refused to comply therewith, thus retaining the use of the money and the possession of the land. They should pay what is legally due on the deeds, or else they should surrender the land; equity will not allow them to keep both. In the language of Justice BLECKLEY, 60th *Ga.*, 590, " Equity says, do equity and have equity. It says redeem—pay the debt, do what you promised, comply with your contract, and then, but not till then, will you be restored to the ownership of the land. And this is right, and right eternal. It will endure forever. It is imperishable and everlasting." The principle of equity herein so strongly and eloquently enunciated we re-affirm, and see no reason why it should not be " imperishable and everlasting."

We would not be misunderstood; that redemption to which we refer is the exact sum for which the grantors are legally liable, which, if found upon the trial as charged in the bill, would be the original principal with only the lawful rate of interest thereon to the day of payment.

The demurrer therefore being properly overruled on both grounds, the judgment is affirmed.