## WOFFORD *vs.* WYLY *et al.*

1. A deed made to secure a debt, with a written obligation to re-convey on payment of the debt as stipulated, given by the grantee to the grantor, taken together, make an equitable mortgage; and one who took title from the grantee of the deed, with notice, could not recover, except upon the same terms as the original grantee, whenever the equities of the grantor are set up.

(*a.*) Peculiarities of this loan, being for an indefinte time, and leaving the question of time for payment of the principal for mutual agreement, discussed.

2. An absolute deed to secure a debt conveys titles, and in order to defeat a recovery thereon by reason of an agreement which, taken with the deed, would make it an equitable mortgage, it is incumbent on the defendant to set up such equities; and where he relies on the agreement to re-convey on certain terms, he must rely upon it as it stands, and cannot attack the deed as usurious, because the rate of interest specified in the contract was usurious unless it was signed by him, which was not done. If he sets up in his equitable plea and relies on the contract which specifies the payment of a certain rate of interest as a condition of re-conveyance, he thereby promises to pay it.

(*a.*) The act of 1875, under which this arrangement was made, does not require that the paper should be signed by the debtor, but only that the rate of interest should be specified in writing. *Semble,* that an agreement to re-convey, in the handwriting of the debtor and signed by the creditor, was a sufficient specification in writing.

72 863
99 526
72 863
100 411

3 The law does not favor interest on interest, except in special cases of fiduciary trusts and the like. In cases where interest is contracted for at higher rates than seven per cent, the contract must plainly show the liability. In the present case, where the contract provided for the annual payment of ten per cent on the principal sum, amounting to an annual payment of $500, it was error to charge that such installments, if not paid, bore interest at ten per cent until paid.

4. Where a loan of money was made with interest at ten per cent, to be paid annually, but no time was specified for the re-payment of the principal, that being left for the agreement of the parties, and to secure such a loan a deed was made to the creditor, who gave to the debtor an agreement to re-convey on payment, if the creditor conveyed the land to one who bought with notice, and who brought ejectment against the debtor, the right of fixing the time of payment by consent was abrogated, and it would be inequitable thereafter to allow a claim for interest on the annual interest unpaid, if it had previously been proper to so compound it.

5. Where an action of ejectment was based on a deed made to secure a debt, and the only equitable plea filed was stricken, a verdict and decree finding for the plaintiff the premises in dispute, fixing the amount of the debt, and allowing the debtor ninety days in which to redeem, in default of which the equity of redemption was to be barred, was illegal. Such finding went beyond the pleadings, and allowed plaintiff to recover the land, in default of payment, within the time prescribed, without either providing for the satisfaction of the debt, or any specified credit to be entered thereon.

(a.) The true equity (with proper pleadings), if the debtor is unable to pay the debt, is to have the land sold, the debt paid and the balance paid to him; or if the proceeds are not sufficient to pay the debt, to credit them thereon.

(b.) The old English mode of allowing a mortgagee to enter and work out a debt does not exist in Georgia, and a plea, praying that this be allowed, was properly stricken.

(c.) It is not decided that reasonable time to pay the debt might not be allowed before the compulsory sale, if reasonable delay has not already been had, where there are proper pleadings therefor.

May 13, 1884.

Deed. Mortgage. Notice. Vendor and Purchaser. Interest and Usury. Verdict. Pleadings. Before Judge FAIN. Bartow Superior Court. July Term, 1883.

To the report contained in the decision, it is only necessary to add that Wofford made to Mrs. Wyly a deed abso-

lute on its face, and on this the case of plaintiff in eject-
ment was based.  Defendant in ejectment (Wofford) took
from Mrs. Wyly the following instrument :

" I have loaned to Wm. T. Wofford five thousand dollars for an in-
definite time, but which may be hereafter determined by us, with
interest at the rate of ten per cent per annum, payable annually ; and
for the better securing of the same, the said Wm. T. Wofford has
made and delivered to me his deed to the settlement of land on which
he now lives, near Cass Station.  Now, when the said William T.
Wofford shall pay me the said sum of five thousand dollars, with in-
terest at the rate of ten per cent per annum, then I am to re-convey
said settlement of . land to him "

The jury found for the plaintiff the premises in dispute,
settled the debt due by defendant at $7,000.00, and al-
lowed him ninety days in which to pay it and have the
land back, and in default thereof, barring the equity of
redemption forever.   The court decreed accordingly.   De-
fendant moved for a new trial, on the following grounds :

(1.) Because the verdict was contrary to law and evi-
dence.

(2.) Because the court charged as follows : " In calcu-
lating the interest on the annual installments of interest,
you will calculate the interest at ten per cent per annum
on the principal ; for instance, if it should be five hundred
dollars for the first year, then you will calculate the inter-
est on this five hundred dollars at ten per cent per annum
from the time it was due until paid ; or, if not paid, up to
the present time, as if it was a separate note for five hun-
dred dollars ; and so on for each year and on each annual
installment of interest on the original principal sum."

(3.) Because the court refused to charge as follows :
" When the principal debt fell due, no annual installment
of interest thereafter falling due would draw interest, but
would retain the character of interest, and not draw interest.
That after the principal debt became due, the interest
would accrue and become due daily and not annually, and
would not draw interest upon itself ;" but in lieu of this
request, charged as follows : " The interest fell due annu-

v 72–56

ally, after as well as before the principal debt fell due, and the installments of interest falling due after maturity of the principal would bear interest just the same as the installments of interest which fell due before the principal debt became due." [The court notes that he charged also, that the interest on annual interest would not draw interest at all, and that there could be no compounding of interest.]

(4.) Because the court charged as follows: "You may find the premises in favor of M. L. Johnson, and you may give the defendant a reasonable time to redeem by paying the money you find due to M. L. Johnson, within a certain number of days or months, or such reasonable time as you think proper, in which to redeem. The law contemplates a reasonable time, but it is with you whether you give any time to redeem."

(5.) Because the court erred in striking defendant's amended plea, which was as follows:

"Defendant further amends his plea, and says that the deed upon which plaintiff is seeking to eject defendant from the premises, described in plaintiff's declaration in above stated case, is tainted with usury for the following reasons, to-wit.: At the time said deed was made, it was stipulated by, and agreed by and between said Mrs. Wyly and defendant, that this defendant should pay Mrs. Wyly ten per cent on the five thousand dollars loaned, which said debt was made to secure, and that said defendant should pay said Mrs. Wyly interest on the annual installments of interest, which contract made the interest which defendant should pay to said Mrs. Wyly more than 12% per annum, which contract was not in writing; for which reason said deed is void."

(6.) Because the court erred in striking, on motion of plaintiff's counsel, that portion of the plea which set up usury.

The motion was overruled, and defendant excepted.

Neel, Connor & Neel, for plaintiff in error.

M. L. Johnson; McCutchen & Shumate, for defendants.

Jackson, Chief Justice.

An action of ejectment in the common law form was

brought by Johnson against Wofford, laying two demises, one in the name of Mrs. Wyly and the other in his own. The plaintiff showed absolute deed in fee to the land from Wofford to Mrs. Wyly, and from her to him, and of course was entitled to recover without more.    The defendant set up an equitable plea, setting up the fact that the deed, read in connection with an obligation from Mrs. Wyly to him, which he exhibited, made an equitable mortgage, and praying for an account to be taken to find the balance due on a five thousand dollar debt with interest, to secure which the deed, absolute on its face, was given.    The prayer was that the balance due be made by sale of the land under equitable foreclosure, and the balance that the land brought after paying the debt be turned over to defendant.

Subsequently this prayer was changed.    It was withdrawn and another made, that the plaintiff be allowed to recover the land only for the purpose of making his money out of it, after the account settled what was due, and then providing for its delivery back to the defendant.    The defendant alleged inability to pay outside of the land, as the reason why he did not tender what was due on the debt, but was willing to pay out of the rents, issues and profits thereof the sum equitably due.

The defendant also pleaded that the contract obligation of Mrs. Wyly, in so far as it stipulated for interest at ten per cent, was usurious, not being signed by himself, and the money on which the usury was exacted being the consideration for the deed, infected the deed with usury, and rendered the title void, and defeated the plaintiff's right to recover in ejectment.    Various payments and sets-off were also pleaded.

The jury found for the plaintiff the premises in dispute, settled the debt due by defendant at $7,000.00, and allowed him ninety days in which to pay it, and have the land back, and in default thereof barred the equity of redemption forever.    The court decreed accordingly.

The defendant moved for a new trial, and its denial on

certain grounds set out in the motion therefor is assigned for error here.

1. Unquestionably the deed and obligation to re-convey on payment of the debt, as stipulated in the obligation of Mrs. Wyly to General Wofford, make an equitable mortgage and quite a peculiar equitable mortgage. No time was stipulated for the payment of the sum of five thousand dollars, to secure which title to the land passed, but it was left indefinite, and the loan was for an indefinite time, which was to be determined or fixed by agreement. Neither party was at liberty to fix that time. It required the concurrence of both minds to the original contract for an indefinite loan to be converted into a loan for a fixed period, and if Wofford had paid regularly the annual interest of five hundred dollars, it seems clear that Mrs. Wyly could not have precipitated the time of payment without recourse to some court, upon allegations and proof of the perilous condition of the investment, or other good reason for annulling the indefinite time of payment and making it immediate or certain. By the agreement, however, the title was put in her to the land. By itself, it was a naked legal title. She conveyed it to Johnson. He took it subject to all equities between the parties, for he knew all about the agreement. And he can do nothing that Mrs. Wyly could not do. He cannot recover the land, except upon the same terms she could, whenever those equities are set up.

2. But it devolves upon Wofford to set them up. He has parted with the legal title. On that title, Mrs. Wyly could have recovered, and Johnson can. Demises here are laid in the names of each. On each there could be a recovery of the premises in dispute, if nothing was shown by defendant to the contrary. Hence the necessities of the case force him to set up the paper which converts the legal title into an equitable mortgage. That paper is his reliance, and his only reliance, to save himself from being legally ejected from the land. Being thus forced to rely

on this paper to retain the premises on the terms it prescribes, having himself produced and exhibited it, how can he equitably attack the deed as usurious, because he did not sign it? If the law made ten per cent interest usurious, unless the promissor or debtor signed the contract, yet even then, if to get equity he invoked a court of equity to help him, because of a contract he made with the other party, he must take all or none of it. He cannot select what suits him and annul what does not. Setting up the contract as his defence in equity to the action of ejectment, he sets it all up, ten per cent interest to be paid annually and all; and when he signs his equitable plea acknowledging in that judicial writing that he did agree to pay it, he has promised *in judicio* to do so, and that in a sworn plea, and equity, having his written acknowledgment, in consideration that she relieve him, will not allow him to say, " I promised, but I did not in that other writing, because my name is not signed to it." Her reply to him will be, that he relies upon it, that his whole case turns upon it, and he must stand with it as an entirety, or he cannot stand erect before her; and only the erect posture becomes him who asks her aid. But the act of 1875 (see acts of 1875, 105), under which this arrangement was made, does not require that the paper be signed by the debtor; the rate of interest need only be specified in writing. This is specified in the hand-writing of defendant, and signed by Mrs. Wyly, who agreed to lend him the money on those terms. It would seem to be a valid contract in writing by the parties, without the necessity of invoking the equitable doctrine of estoppel, before applied to the defendant's having set up the instrument in his plea. Therefore there is no equity or law in the plea of failure of title, because the consideration of the deed was usurious, and the court was right so to rule.

3. The rate of interest at ten per cent upon the principal debt was fixed by contract, but we cannot see that by the contract the same rate of interest attached to the an-

nual interest of five hundred dollars, if not paid at the
end of the year.   There is nothing in the contract going
to show that such was the understanding.   The law does
not favor interest upon interest, except in special cases of
fiduciary trust, or something of that sort; in cases where it
is contracted for at higher rates than seven per cent, the
contract must plainly show the liability.   Therefore the
court was wrong to charge that the annual installment of
five hundred dollars, due at ten per cent interest on the
principal debt of five thousand dollars, bore interest, if not
paid, at ten per cent, until paid.   Counsel for defendant
in error seems to admit this, and has tried to rectify the
error by writing off, or trying to write off, the excess of
three per cent.

4. But another serious question occurs to us in this
matter of interest on the annual interest.   Conceding that,
in a case of this sort, it is right and legal, under this con-
tract, to allow it at seven per cent, up to what time is it to
be counted?   No definite time was fixed for the payment
of the principal, but it was to be fixed by the parties to
suit them.   It never was so fixed.   The agreement set up
by defendant was not negotiable.   When Mrs. Wyly sold
the land, and consequently the debt, she abrogated the
contract, in so far as the payment, the punctual payment,
annually of five hundred dollars was stipulated therein,
so as to contradict the general rule that interest shall not
bear interest.   She and Wofford were to fix the time that
this loan, indefinite in duration, should determine and be-
come definite; not Johnson and Wofford, or any other
assignee of hers and Wofford.   And this payment of inter-
est upon interest was to continue only up to that time.
Certainly, it would seem, when Wofford was sued for the
land, when the contract, without his assent as to time to
pay the principal debt, was ignored, when no suit was
brought on that contract for his breach of it, and equities
thereon were not invoked at all, but ejectment for the land
itself, the retention of which entered into the stipulation

for the annual payment of five hundred dollars as interest, and thus for legal interest in the nature of damages for non-payment thereof every year, was brought, it would seem, in such a case, that this interest would not longer bear interest. Land was demanded. The pound of flesh must be delivered, it is true ; but the bloody interest upon interest, which so rapidly depletes the financial veins, ought, on the naked, cold demand for flesh at law, to be staunched in equity. We think, therefore, that when this indefinite loan upon stipulated terms was repudiated by one party and made definite by her own act, and suit was brought for the land without reference to the loan at all, or the equities of the agreement to convey back, then the stipulation implied legitimately from the whole contract, including that of indefiniteness of time of duration of loan, to pay interest upon interest, ought in equity to cease. This would be most clearly so, and might be extended to embrace other equities, if Wofford himself had been punctual; but there is no provision that the principal shall fall due whenever this annual interest is not punctually paid, at the option of Mrs. Wyly alone. On the contrary, it would seem from the contract that, in any contingency which made it desirable to fix a limit in time to the loan, both parties should be consulted, confer and act together. Therefore, when one alone acted, we think the better equity is that she lose at least this hard rule of compound interest *quoad hoc*, as to the interest on annual interest.

Of course the interest at ten per cent will continue to run, so far as the principal debt is concerned, until paid.

5. We do not see how this verdict and decree can stand, in the state of the pleadings, as we understand them. The defendant's pleas as to usury and invoking the recovery of the land by the plaintiff to enjoy the rents, issues and profits, were stricken by the court.

We have held that the plea of usury was properly stricken. We think that the other was also properly stricken. The true equity is to sell the land, pay the debt

out of the proceeds, and turn over the balance of the fund, if any, to Wofford; if the land does not bring enough to pay the debt, then pay it as far as it goes, and give a money decree against Wofford for the balance. So far as this verdict and decree are concerned, as they now stand, if Wofford does not redeem in three months, his equity of redemption is gone, but there is no provision that the debt against him be extinguished in whole or in part. His land is gone, but the debt is open against him.

The verdict and decree do not fix the value of the land. The verdict does not say what it is worth, so as to extinguish the debt or credit it; nor does it say that plaintiff shall take it as an extinguishment of the debt. It does not cover, therefore, the issue of fact necessary to a decree, even if the pleadings allowed it.

When defendant's equitable plea was stricken, what remained on which to base the verdict? The prayer for the sale was withdrawn, and thus it looks as if nothing remained. If anything did remain in the pleadings to authorize the jury to set off the land against the debt, unless paid in three months, they have not done it. The jury and the court leave the defendant minus his land, with the debt against him not settled by either.

We think that the old English mode of entry and working out the debt of the mortgagor by the mortgagee has been practically exploded, in equity as well as at law, under our system. The remedy by extent upon real estate has never been applied in Georgia, within our knowledge.

If the prayer of defendant had been granted, it would involve constant trouble and dispute, and more litigation, the very circuits and multiplicity of which equity does not favor. It would not settle the contest. An equitable sale of the property, and payment first of this debt out of it, if enough, and balance to defendant, if more; if not enough, credit and money decree for balance, is the true way to settle this controversy. It is the only way to do it completely and by one decree. If defendant does not

make such a defence and prayer, then the law will take away his land, and a naked verdict for the premises in dispute is the only legal verdict. What rights and remedies he may afterwards have are for the consideration of his counsel. It is for them to see, if visible, the advantage of giving up the land, and then suing, in the teeth of the old adage that possession is nine points in law, if, indeed, putting in and then withdrawing an equitable plea in this case might not be an obstacle in their way.

On the whole, our conclusion is that the only legal verdict would have been for the premises in dispute, under the pleadings as they stood; but as the jury went on and adjudicated a debt, the sum due on it, and provided for its payment in a certain time, and if not paid, barred the equity of redemption on the part of defendant, and neither fixed the value of the land nor extinguished or credited the debt of defendant, we are constrained, in sheer justice, and in regard—slight regard—to some degree of pleading, to set aside the verdict and to award a new trial; and it is so ordered.

We do not mean to say that, on proper pleadings by defendant, the verdict and decree might not fix a reasonable time within which he be allowed to pay the amount found due before the compulsory sale in equity, if it should be thought reasonable delay has not been already exhausted; but we do mean to say that, at some time in the range of reason, this debt should be paid by the sale of this land, and this controversy and litigation be thus settled.

Judgment reversed.

Cited for plaintiff in error, Acts of 1875, p. 105; 7 Wait's Act. and Def., 52; Brown's Stat. Frauds, §§355, 366; 3 Pars. Con., p. 4, 5; 25 *Ga*, 391; 50 *Id*., 644; 25 Am. R., 543, n.; 30 Am. R., 388; 3 Pars., 6 and 7, (N. E.); 1 Wait's Act. and Def. p. 113; Brown Fr., 357; Code, §2057; 5 *Ga*., 33; 49 *Id*., 514; 54 *Id*., 554; 55 *Id*, 412, 691; 59 *Id*., 616; 63 *Id*., 31, 96; 64 *Id*., 71; 66 *Id*, 398, 584; 56 *Id*.,

33; 1 Story Eq. Jur., 64, E 30 , 302; 20 Am. R., 756; 11 *Id.*, 227; 2 Story Eq. Jur., §10ι.s, 1018 c, 1019; 55 *Ga.*, 650–5; 57 *Id.*, 601, 605; Pom. Eq. Jur., 1227; 2 Jones on Mort., 1557, 1561, 1571–2.

For defendant in error, 3 Pars. Con., p. 5, 6, 8, 9, 10; Story, 1015 n. ; Brown on Fr., 357; Bishop on Con., §§167, 173; 64 *Ga*, 492; 25 *Id.*, 391; 61 *Id*, 275; 37 *Id.*, 384; 57 *Id.*, 60, 61, 601; 61 *Id.*, 458; 54 *Id*, 45; 64 *Id.*, 492; 11 Barb., 80, 90; 61 *Ga.*, 275; 37 *Id.*, 384; Code, §§2056, 3085; 4 Johns. Ch., 140; 63 *Ga.*, 159; 61 *Id.*, 400; 60 *Id.*, 588· 59 *Id.*, 507; 55 *Id.*, 650.