## PUSSER v. THOMPSON.

1. Where a deed under seal was made conveying title in order to secure an indebtedness represented by a promissory note, under the Civil Code, §§ 2771 et seq., and on its face it recited the debt and the purpose to secure it, although suit on the note became barred by the statute of limitations, the creditor could foreclose the deed as an equitable mortgage within twenty years from its execution.

2. While an instruction to the jury "that the presumption of law is against usury, and the burden would then be upon the defendant in this case, who sets up usury as a defense, to establish the existence of usury in the contract to your satisfaction," was not entirely apt or exact in expression, yet, when taken in connection with the entire ·charge, it does not require a reversal.

3. There was no error in overruling the motion for a new trial.

Argued November 7, 1908.—Decided March 10, 1909.

Equitable petition. Before Judge Martin. Pulaski superior court. June 24, 1908.

On February 6, 1892, David Pusser made to A. J. Thompson & Company a promissory note for $410.71, due on the first day of October after date. It was not a sealed instrument, under the law of this State. On the same day he executed to Thompson & Company, who were stated to be a firm composed of A. J. Thompson and G. P. Stubbs, a deed conveying certain described land. In the body of the instrument, as set out in the record, was the following clause: "This conveyance is intended to operate as provided in sections 1969, 1970, and 1971 of the Code of 1882, in regard to the sale of property to secure debts, and to pass the title of the property described into the said A. J. Thompson & Co., the debt hereby secured being one promissory note, for $10.71 [$410.71?], dated this day and due Oct. 1st, 1892." It was also provided, that, if the debt should not be paid promptly at maturity, the grantees, their agents, or legal representatives should be authorized to advertise the property and sell it at public outcry, make a conveyance to the purchaser in fee simple, "thereby divesting out of the said David Pusser all right and equity that he may have in and to said property, and vesting the same in the purchaser or purchasers aforesaid." In that event, the proceeds were to be first applied to the payment of the debt and expenses of the sale, and the balance, if any, to be paid to Pusser. The note was not paid at maturity, and thereafter the right to bring suit on it became

barred by the statute of limitations. In 1906 the holder of the security deed (the surviving partner of the firm) filed a petition in the superior court, alleging the making of the note, the giving of the deed to secure the debt, that it had not been paid, and that Pusser had remained in possession continuously since the note and deed were made. It was prayed, that the security deed be foreclosed as an equitable mortgage; that the land be sold, the proceeds be applied to the liquidation of the debt specified in such deed and the payment of costs of the proceeding, and the surplus, if any, be paid over to Pusser; and that his equity of redemption be forever barred. A general judgment on the note and for attorney's fees was also prayed, but this was stricken on demurrer. A demurrer was interposed on the grounds, that the instrument referred to in the petition was not a mortgage, but a deed to secure a debt, and could not be foreclosed as a mortgage; and that the plaintiff had an adequate remedy at law, and was not entitled to any decree of foreclosure. These grounds of demurrer were overruled. The defendant pleaded, that there was usury in the transaction, that the title which the deed purported to convey was thereby rendered void, and that accordingly the instrument could not be foreclosed or enforced. The jury found for the plaintiff. A motion for a new trial was made and overruled, and the defendants (Pusser's wife having been joined with him) excepted.

*Herbert L. Grice* and *Tomlinson Fort,* for plaintiffs in error.

*H. F. Lawson* and *W. L. & Warren Grice,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. The principal question in this case is whether the plaintiff could proceed by equitable petition to foreclose the security deed as an equitable mortgage. At common law a mortgage was originally treated as a conveyance of property, defeasible by the payment of the debt secured, when due. The title conveyed was like other estates defeasible upon condition subsequent. To relieve debtors from the hardship resulting from a forfeiture or loss of the property by mere failure to pay promptly, often resulting in an unconscionable advantage to the creditor, and the obtaining by him of property valued far beyond the debt secured, equity interposed and permitted them to redeem the land by the payment of principal and interest, instead of losing it entirely. Efforts were made by creditors to shape contracts which would forfeit the prop-

erty to them on non-payment, or prevent redemption; but such attempts met with but little favor in courts of equity. Thus grew up the somewhat peculiar situation that in courts of law a mortgage conveyed a title defeasible upon condition, while in courts of equity the real nature of the transaction—the securing of payment to the creditor—was considered, and redemption was allowed after default in making payment according to the promise. Thus came to be established what is known as the "equity of redemption," which in modern times has been recognized as the right of the mortgagor; and for many purposes he has been treated as the substantial owner of the land except as against the secured creditor. Lord Mansfield went quite far in expressing this view, and in referring to a mortgage as only a security. In America a number of States have adopted the plan of treating a mortgage only as a security or lien, rather than as a conveyance of title. 1 Jones on Mortgages (6th ed.), § 6 et seq. Such is the status of a mortgage in Georgia, where the Civil Code, § 2723, declares that "A mortgage in this State is only a security for debt, and passes no title." As a natural result of holding a mortgage to be a mere lien, other things might intervene and seriously interfere with the security. A power of sale contained in a mortgage was held to terminate upon the death of the mortgagor. A year's support for the family or dower for the widow might claim precedence. In order to provide greater security for the creditor, and to prevent matters of the kind referred to from endangering the collection of the debt, the legislature provided that a conveyance of the actual title could be made, with bond to reconvey upon payment. Provision was also made by which the creditor, upon recovering judgment against his debtor, might file and have recorded a deed reconveying the property to the latter, and levy on and sell it for the debt; and priority was given to him, upon pursuing the statutory remedy, over other judgments against the debtor. It will be observed that this authorized the conveyance of title as security, somewhat analogous to the common-law mortgage. Upon non-payment, the creditor could proceed as above indicated, or he could bring ejectment against his debtor, and recover possession of the land. Still the substantial fact that this conveyance was for the purpose of security, and not to convey an indefeasible title, was recognized. In 1889 the legislature passed an act providing, that, where such a deed was made to secure a

debt, the surrender and cancellation of the deed in the same manner that mortgages are cancelled, on payment of the debt, should operate to reconvey the title, "and such cancellation may be entered of record by the clerk of the superior court in the same manner that cancellations of mortgages are now entered." Civil Code, §2774. By section 2775 it is declared that the vendor's right to a reconveyance of the property, upon compliance with the contract, shall not be affected by any liens, incumbrances, or rights which would otherwise attach to the property by virtue of the title being in the vendee, but the right of the vendor to a reconveyance shall be absolute and permanent upon his compliance with his contract with the vendee, according to the terms thereof. It has been held, that if the holder of such a deed sues in ejectment or complaint for land, and recovers possession, he does not hold it absolutely freed from all claim on the part of the debtor; but the latter may still bring him to an accounting, and repossess himself of the land upon payment of the debt. *Polhill* v. *Brown*, 84 *Ga.* 338 (10 S. E. 921). If suit is brought by the holder of the deed to recover possession of the land from the maker, the latter may file an equitable plea, and prevent the recovery by paying the amount due. Ibid.; *Lackey* v. *Bostwick*, 54 *Ga.* 45. As against the rest of the world except the creditor or one claiming under him, the debtor remaining in possession is so far treated as the owner that he may defend an action of ejectment, or may bring one if evicted, and the security deed which he has made subject to the contract to reconvey on payment of the debt can not be set up against him as paramount outstanding title by a person who does not connect his title therewith. *Ashley* v. *Cook*, 109 *Ga.* 653 (35 S. E. 89). These illustrations will suffice to show that while a conveyance may be made to secure a debt, which will carry the title, and not stand exactly like a mortgage in the ordinary form, yet in many ways the substance of the transaction, that the underlying purpose is to secure a debt, and that there are equities remaining in the debtor, is recognized. The deed made in this case on its face recognized an equity in the debtor after failure to pay the debt at maturity, by authorizing the creditor, if he saw fit, to make sale, discharge the debt, and pay the balance to the debtor.

A consideration of what has been said naturally leads to an understanding of the reason underlying decisions which have been

made on the subject of whether such a deed can be foreclosed as an equitable mortgage, by petition invoking the equitable jurisdiction of the court. By section 2725 of the Civil Code it is declared that "A deed or bill of sale, absolute on its face and accompanied with possession of the property, shall not be proved (at the instance of the parties) by parol evidence to be a mortgage only, unless fraud in its procurement is the issue to be tried." Where such a deed was given without referring to the indebtedness, and apparently conveying an absolute title, but the debtor remained in possession, it was held that he (or rather his widow, in a contest with other creditors) could show that the conveyance was only intended to secure a debt, and thus operated as an equitable mortgage. *Carter* v. *Hallahan,* 61 *Ga.* 314. On such a title the creditor could bring ejectment, or, if he chose, the deed could be foreclosed in equity as an equitable mortgage. *Bateman* v. *Archer,* 65 *Ga.* 271. In *Wofford* v. *Wyly,* 72 *Ga.* 863, a deed made to secure a debt, though absolute in form, where the debtor remained in possession, was treated as an equitable mortgage, and subject to equitable defenses, when an action of ejectment to recover the land was brought upon it. In *Broach* v. *Smith,* 75 *Ga.* 159, it was held that "A conveyance made under section 1969 of the Code [§2771 of the Civil Code of 1895] to secure a debt, and which is void as title on account of usury, can not be foreclosed as an equitable mortgage." The inference may be drawn that, if the deed had not been void for usury, it might have been so foreclosed; though this was not affirmatively ruled. In Merrihew v. Fort, 98 Fed. 899, the district judge of the United States, presiding in the circuit court, held, that, "Under Code Ga. 1895, §2771 et seq., a deed to real estate, given to secure a debt, may be foreclosed by the grantee as a mortgage, notwithstanding a provision therein that it is to be construed as a deed passing title, and not as a mortgage; such provision being one for the benefit of the grantee, which he may waive at his election." See also, Ray v. Tatum, 72 Fed. 112 (18 C. C. A. 464); Bank of the Metropolis v. Guttschlick, 14 Pet. 20 (10 L. ed. 335). In North Carolina and West Virginia deeds of trust to secure an indebtedness, as there customarily made, have been treated as equitable mortgages. Arrington v. Rowland, 97 N. C. 127 (1 S. E. 555); Criss v. Criss, 28 W. Va. 388; 1 Jones on Mortgages (6th

ed.), §§ 62, 162 et seq. See also *Hester* v. *Gairdner*, 128 *Ga.* 531 (58 S. E. 165).

While the statute provides a method by which a judgment can be obtained against a debtor, a reconveyance made for the purpose of levying, and a sale made, with certain advantages and priorities in favor of the creditor pursuing such method, and while he also has the option to bring suit for the recovery of possession of the land by virtue of the title conveyed by the security deed, yet this does not prevent him, if he so chooses, from treating the instrument as an equitable mortgage and proceeding to foreclose it by equitable petition. If he elects to do so, what effect, if any, it may have on the priorities and advantages given to him where he proceeds in strict conformity to the statute, is not in question. The contention now made is as to whether he can pursue the remedy of filing an equitable petition to foreclose the instrument as an equitable mortgage, instead of pursuing the statutory plan. We think that he can do so.

Even if ordinarily such a deed could not be treated by the grantee as an equitable mortgage, and foreclosed as such, there is a special reason why he should be allowed to do so in this case. Suit on the note is barred by the statute of limitations. He can not, therefore, recover judgment on it, file a deed, and levy upon the land in the manner pointed out by the statute. But the debt remains unpaid. If he could bring ejectment against the debtor and recover possession, that would not satisfy the debt nor would it operate as a finality as to the equities between them; but, as already stated, it has been held that, after recovery of possession, he would not hold the land as the absolute, indefeasible owner, but would be subject to an equitable accounting for rents, issues, and profits, and to have the land ultimately restored to the debtor when the debt had been discharged. Why should the creditor be compelled to recover possession and hold it subject to an equity on the part of the debtor? He may do so, but will the law confine him to that method of procedure? If there are equities which may ultimately require adjustment between parties, why should a court having equitable jurisdiction refuse to adjust them now, instead of compelling one of the parties to wait until, at some indefinite time, he may be called on to do so by the other, or perhaps by lapse of time, death, forgetfulness, or other reason it has become difficult

to clearly prove the facts? One of the maxims of equity is "Vigilantibus, non dormientibus, jura subveniunt." If to the vigilant, rather than to those who sleep over their rights or delay in asserting them, equity gives aid, and if laches in appealing to a court of equity sometimes furnishes reason for refusing relief, why should a court which administers equitable remedies refuse to finally adjust and determine the equities existing between the parties in a case like the one before us, and compel the secured creditor to resort to an inadequate legal remedy, and one which neither gives him absolute and indefeasible title nor repays him his money, and postpones indefinitely the final settlement or adjustment between him and his debtor? This would be not merely to permit the exercise of a privilege similar to that which existed in England, of entering upon mortgaged property and working out the debt, but would compel the creditor to take that course.

The decisions in the cases of *Story* v. *Doris*, 110 *Ga.* 65 (35 S. E. 314), and *Duke* v. *Story*, 116 *Ga.* 388 (42 S. E. 722), do not conflict with what is here held. In the former of those two cases the debt to secure which an absolute conveyance was made became barred by the statute of limitations. The deed made no reference to it, but was absolute on its face. It was executed also, not by the debtor himself, but by one from whom he had contracted to purchase the land. The agreement that the title so conveyed should be held as a security rested entirely in parol. It was held that, after the right to sue upon the debt had become barred, equity would not undertake to foreclose "the equivalent of what might be termed an oral mortgage," there being nothing in writing or under seal to bind the debtor or prove an unbarred debt. So likewise in in the case of *Duke* v. *Story* it was held that "A security deed which does not refer in any way to the debt to secure which it was given, or furnish any evidence of its existence, can not be foreclosed as an equitable mortgage, and a money judgment obtained thereon, if the obligation secured by the deed is barred by the statute of limitations." Neither of these decisions repudiates but both recognize the doctrine announced in *Elkins* v. *Edwards*, 8 *Ga.* 325, where it was held that "When a creditor takes a mortgage to secure the payment of promissory note, and the remedy on the latter is barred by the statute of limitations, his remedy, on the mortgage, is not necessarily barred—the debt being unpaid—but the

creditor may avail himself of the statutory remedy to foreclose his mortgage, in satisfaction of his debt." In that case the mortgage was given to secure certain notes; and the debt being thus referred to and described in a sealed instrument made to secure it, the fact that the remedy by suit upon the notes was barred did not destroy or bar the right to foreclose the mortgage. The difference will be readily perceived between a deed absolute on its face and containing no reference to a debt, where the only evidence of the indebtedness rests in parol or in a separate note suit on which is barred by the statute of limitations, and a mortgage or security deed under seal, which contains in itself evidence of the indebtedness which it was given to secure.

There was no error in overruling the demurrer. It contained one or two other grounds besides that above discussed, but they are not referred to in the brief of counsel for plaintiff in error.

2, 3. The grounds of the motion for a new trial contain nothing which requires a reversal. The evidence was conflicting as to whether there was usury in the original transaction when the security deed was executed, or whether some time thereafter, and as an independent transaction, an effort was made to charge usury; but it was not such as to demand a finding that the deed was infected with usury, and was therefore void.

The court instructed the jury "that the presumption of law is against usury, and the burden would then be upon the defendant in this case, who sets up usury as a defense, to establish the existence of usury in the contract, to your satisfaction." This expression was perhaps not technically accurate or apt. But when taken in connection with the entire charge, it practically informed the jury that when a deed to secure a debt was apparently regular and lawful and did not disclose any usury on its face, and the defendant sought to have it declared void by setting up that it was infected with usury, this was an affirmative plea, and the burden of establishing it would rest upon the defendant. Exception was taken to the use of the expression "the presumption of law is against usury." It might be interesting, but would be aside from the necessities of the case, to trace the history of many presumptions of law,—how at first they were mere inferences of fact which the jury might draw if they saw fit; how, after having undergone a novitiate in the jury-box alone, they then rose to the dignity

of furnishing a prima facie presumption, which was rebuttable; and how some of them were ultimately graduated into the circle of conclusive presumptions of law. From the entire charge it was evident that the court did not lead the jury to believe that there was any conclusive presumption against usury, but merely that he who set up affirmatively the existence of usury and sought to avoid a deed by doing so carried the burden of sustaining his contention. In *McBrayer* v. *Walker*, 122 *Ga.* 246 (50 S. E. 95), an entry on the deed itself indicated that it was void as title, because a part of a usurious transaction. The burden was thus on the plaintiff to explain the entry.

Objection is also taken to the expression "to your satisfaction," without adding specifically that a preponderance of evidence would suffice for that purpose. No request to charge appears to have been made on that subject. It has been held that, in the absence of a request, it is not error requiring a reversal to omit to define what constitutes a preponderance of evidence or what may be considered in determining it. That point is not, of course, identical with the one now made, but is somewhat similar. *Gunn* v. *Harris*, 88 *Ga.* 439 (14 S. E. 593) ; *Geo. So. & F. Ry. Co.* v. *Young Investment Co.*, 119 *Ga.* 513 (46 S. E. 644). In view of the whole charge, in the absence of any such request for additional instructions, we do not think that the jury were at all likely to have been misled by this expression, or by the omission to state specifically that "in all civil cases the preponderance of testimony is considered sufficient to produce mental conviction."

*Judgment affirmed. All the Justices concur.*