POLHILL *v.* BROWN.

1. The boundary line between two counties running through the land sued for, service by the sheriff of the one in which the suit was brought upon the defendant who resided in the other, was proper, there being no person residing in the former on whom service could be made.

2. The deeds under which both plaintiff and defendant claimed, as well as the declaration, describing the land as lot No. 59, known as the old Davis place, but it being shown that this place was lot 69, the allowance of an amendment changing the number in the declaration to the proper one, was not erroneous.

3. Whatever usury may have been in the contract under which defendant had formerly conveyed the land to one to secure a debt, could not affect a deed which defendant procured this one to make to plaintiff to indemnify him for standing security for defendant upon a note to a fourth person for borrowed money.

4. A map, properly certified to by the secretary of state, of the county in which the trial was pending and in which a portion of the land in question lay, was admissible in evidence.

5. A written agreement to the effect that defendant should have further time to pay the debt, made subsequently to a verbal one to the effect that if defendant did not pay the indebtedness, plaintiff was to have the land, rendered proper the ruling out, on motion, of the testimony as to the verbal agreement.

6. Exception to refusal to allow defendant's counsel to open and conclude the argument, is wholly without merit.

7. Two hours was sufficient time for defendant's counsel to argue to the jury. That the court said, on allowing him to continue his remarks beyond that time, "Hurry through, as this case has already consumed more time than its importance demands," was no error.

8. In the absence of notice from defendant not to do so, plaintiff had a right to pay the debt on which he was surety for defendant, and would be entitled to recover of him the amount thus paid.

9. Though the vendee in a deed conveying land as security may recover possession of it in ejectment, he has no right to mesne profits except pending the action and to apply the same in payment of the debt due him by his debtor.

10. Though the vendee of land conveyed as security may be entitled to its possession, yet if it be worth more than the amount owed him by his debtor, the latter may have it sold by proper proceeding, and the debt discharged. If the creditor recover it in ejectment, he holds, as he did before recovery, as security for the debt, and is accountable to the debtor for the rents and profits; and whenever these amount to enough to discharge the debt, the debtor can compel a reconveyance of the land to himself.

(a) Questions for new trial indicated, and directions given.

SIMMONS, J., not presiding, because of sickness.

January 31, 1890.

Service. Ejectment. Amendment. Pleadings. Interest and usury. Principal and surety. Evidence. Practice. Deeds. Title. Mesne profits. Debtor and creditor. Before Judge GUSTIN. Houston superior court. April term, 1889.

The action was by Wilson Brown against Daniel Polhill for land and mesne profits. The abstract of title at-

tached to the declaration was, a deed from Polhill to J. P. Brown, and a subsequent deed from J. P. Brown to the plaintiff. It appeared that defendant had borrowed money from J. P. Brown and conveyed the title to him as security for the loan, and afterwards borrowed money from one Ellis, giving a note on which plaintiff was security, and with this money paid J. P. Brown's claim and had him to make the deed to plaintiff. The verdict was for the plaintiff, with rents ; and the defendant took exceptions. The decision states the rest of the case.

MARTIN & SMITH, for plaintiff in error.

C. C. DUNCAN, *contra.*

BLANDFORD, Justice.

1. Brown sued Polhill to recover possession of a certain lot of land. Polhill moved to dismiss the action, and therewith filed a plea to the jurisdiction of the court, upon the ground that he was not properly served, in this : that he resided in the county of Pulaski, but the process was directed to, and the copy declaration and process served by, the sheriff of Houston county. The facts show that the land sued for was partly in Pulaski and partly in Houston, the boundary line between these counties running through a portion of the land, and that no person upon whom service could be made resided in Houston. The jury found against the plea. The court overruled the motion to dismiss, and held that the service was right. We think this ruling was proper, under section 3355 of the code (Acts 1853-4, p. 54), which provides for service in such cases. That section says :

" In all cases where any person resides in one county, whose plantation or land extends over the line into an adjoining county, and there is no one upon whom service in an action of ejectment can be legally perfected in the county where such land may lie, it shall be law-

ful for the clerk of the superior court of the county wherein such land may lie to issue process in behalf of the plaintiff against the defendant, which process shall be directed to the sheriff of the county wherein such land may lie, and such sheriff shall serve the same, and such service shall be good and valid."

2. It is assigned as error that the court allowed an amendment to the declaration changing the number of the lot in controversy from 59, as set out in the declaration, to 69. Inasmuch as the deeds under which both the plaintiff and the defendant claimed, and the declaration, described the land as lot number 59 known as the Davis place, or the "old Davis place," and as it was shown to the court that the Davis place was lot number 69 instead of lot number 59, we think the court was right in allowing the amendment.

3. The plaintiff in error pleaded there was usury contained in a certain deed made by him to one J. T. Brown. This plea was, on motion of the defendant in error, stricken by the court, and this is excepted to. Upon looking at the whole plea, we think there was no error in this ruling. The plea alleged that the defendant, Polhill, had conveyed the land to J. T. Brown to secure a debt upon which he was to pay 25 per cent. interest, the same being usurious; and that afterwards he (Polhill) agreed with the plaintiff, Wilson Brown, that if he (Wilson Brown) would become surety for him (Polhill) upon a note to be given to one Ellis for the purpose of borrowing money, he would cause J. T. Brown to convey the land to him (Wilson Brown) to secure him (Wilson Brown) for standing security for him (Polhill) to said Ellis. It appears to us that whether there was usury in the deed or in the contract by which Polhill made the deed to J. T. Brown, could make no difference as to the deed which Polhill procured J. T. Brown to make to Wilson Brown. What-

ever defect there may have been in the former could not affect the latter.

4. It is alleged as error that the court admitted in evidence a certain map of the county of Houston, which was properly certified to by the secretary of state. We do not think the court committed error in admitting this map. The map was made under the authority of a law of the State, and was a map kept by the county authorities of Houston county; and it was shown by the evidence that a portion of the land sued for lay in that county, being divided by the boundary line between the counties of Houston and Pulaski.

5. It is alleged as error that the court admitted in evidence a conversation which took place between the plaintiff, Wilson Brown, and Polhill, to the effect that if Polhill did not pay the indebtedness to Ellis, Brown was to have the land. It appears that Polhill put in evidence an agreement in writing to the effect that he (Polhill) was to have further time to pay this debt, which agreement in writing was made after the conversation referred to. Upon the admission in evidence of this agreement in writing, Polhill moved to rule out the conversation, which had already been admitted in evidence. The court refused to rule out the conversation; and in this we think the court committed error. We think that the verbal conversation which preceded this written agreement is to be considered as merged in or entirely done away with by the latter.

6. It is alleged as error that the court refused to allow the defendant's counsel to open and conclude the argument. We think this exception is wholly without merit, under the facts in the record.

7. It is alleged as error that the court, after counsel for the defendant had spoken in argument to the jury for two hours, remarked, "Hurry through, as this case has already consumed more time than its importance

demands." We agree with the court below that two hours in such a case as this was sufficient time for the defendant's counsel to put his case properly before the jury. Besides, as appears from the record, counsel was allowed to go on and continue his remarks to the jury.

8. The charge of the court on the subject of usury is excepted to. Polhill contended that inasmuch as he had agreed to pay usury to Ellis upon the note which Wilson Brown signed as his security, this agreement infected with usury the deed which he (Polhill) caused to be made to Wilson Brown. The court charged that if Wilson Brown paid to Ellis the debt upon which he (Brown) was surety for Polhill, without notice by Polhill not to pay the same, he had a right to pay it, notwithstanding there was usury in the debt; and that Polhill would be bound to pay him (Brown) the amount of money he thus paid. We think this charge was correct.

9. The charge of the court on the subject of mesne profits is also excepted to. And on this subject we think the court erred. In a case of this kind we do not think mesne profits are recoverable. The deed which Polhill caused J. T. Brown to make to Wilson Brown was a security for a debt. Polhill was the owner of the land, and Wilson Brown held it merely as a security or indemnity. While he had a right to the possession of the land and might have recovered the same in an action of ejectment, he had no right to recover mesne profits from the owner of the land, who was Polhill, except pending the action and to apply the same in payment of the debt due him by Polhill.

10. In this case we think that nearly every material point has been adjudicated by the trial already had, and the litigation should be shortened as much as possible, as there is to be another trial of the case. Where one is the owner of land and sells it to another, giving

his bond for titles and taking the vendee's note for the purchase money, the owner, on default of payment, may recover the land, because the title is in him; but it does not follow that because one who becomes liable to another conveys or causes to be conveyed to the latter his land as security or indemnity, the person holding such conveyance may absolutely recover the possession of the land in an action of ejectment. While he may be entitled to the possession of the land as a part of his security or indemnity, yet if the land be worth more than the amount for which the owner is liable to the holder of such conveyance, the owner, for the purpose of discharging his liability, may have the land sold by a proper proceeding for that purpose, and the debt discharged. And it does not follow that if the creditor, under such circumstances, should recover the possession of the land in an action of ejectment, the land would be absolutely his; but he would hold the land as he did before the recovery, as a security for the debt or liability of the debtor, and would be accountable to such debtor for the rents and profits of the same; and whenever the rents and profits amounted to enough to pay off and discharge the debt or liability, the debtor could compel a reconveyance of the land to himself.

So we think that on the future trial of this case there are but few questions to be determined; and we direct that the court refer to the jury the following: (1) as to the amount of the debt which Wilson Brown paid for Polhill, and when it was paid, and how much is due to Brown from Polhill; (2) the value of the land. And if it should appear that the value of the land exceeds the indebtedness of Polhill to Brown, the court should decree a sale of the same, and the proceeds arising from such sale should be first applied to the payment of the debt due by Polhill to Brown, and the overplus be paid

to Polhill; or that the plaintiff have leave to file a petition asking that this land be sold and that the money arising from the sale be first applied to the payment of his debt due by Polhill, and that the balance be paid to Polhill, he the plaintiff making a conveyance to the purchaser.          *Judgment reversed, with directions.*