In re POLO CLUB APARTMENTS ASSOCIATES LIMITED PARTNERSHIP F/K/A Ashley Creek Associates, Limited Partnership, Debtor.

Bankruptcy No. A89–14227–SWC.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 12, 1993.

Richard D. Ellenberg, Atlanta, GA, for trustee.

Timothy J. Ramsey, Thomas Rosseland, Bodker, Ramsey & Andrews, Atlanta, GA, for claimants.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

This matter is before the court on the objection of Richard D. Ellenberg, Chapter 7 Trustee ("Trustee"), to the proofs of claim filed by Mutual Benefit Life Insurance Company in Rehabilitation ("Mutual Life") and NationsBank, f/k/a The Citizens and Southern National Bank ("Nations-Bank") (also hereafter collectively referred to as "Claimants"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B). Based on the evidence presented and for the reasons hereafter discussed, the court sustains the Trustee's objection and the claims of Mutual Life and NationsBank are disallowed. Findings of fact and conclusions of law are set forth as follows.

## FINDINGS OF FACT

At the February 6, 1992, hearing on the Trustee's objection, neither Claimants nor the Trustee presented witness testimony or affidavits but instead argued their legal positions. The parties have submitted this matter on essentially undisputed facts set forth in the record consisting of the pleadings, briefs, and exhibits of each party and the court files in this case.[1]

1. Although First Fidelity Bank, N.A. of New Jersey ("First Fidelity") also filed memoranda on February 24, 1992 and March 9, 1992, its claims were settled pursuant to the court's order of March 20, 1992.

In 1987, Polo Club Apartments Associates Limited Partnership f/k/a Ashley Creek Associates, Limited Partnership ("Debtor"), contracted with a management company to manage the Property and collect the rents. Pre-petition rents for the period June through November 1989 were collected by the management company. None of these rents were ever paid to the Debtor.

Debtor filed its voluntary Chapter 11 petition on December 4, 1989 ("Petition Date"). A cash collateral order was entered. All post-petition rents were used to pay operating expenses of the Debtor's principal asset, the Polo Club Apartments ("Property"), or were paid to Resolution Trust Corporation, as Receiver for City Savings, F.S.B. ("RTC") as the holder of the priority security deed. Debtor operated as a debtor in possession until June 19, 1990, when a Chapter 11 Trustee was appointed. On May 6, 1991, the court entered an order approving the Trustee's abandonment of the Property to RTC. After abandonment, RTC foreclosed on the Property and no funds were generated to pay Claimants' junior interests. On July 1, 1991, the court converted this case to a Chapter 7.

Debtor initiated an adversary proceeding on April 18, 1990, against the former management company and its general partner.[2] In its complaint, Debtor sought to recover the funds allegedly converted or absconded with by the named defendants. After appointment, the Trustee amended the complaint alleging breach of fiduciary duty and seeking punitive and exemplary damages and interest. This litigation was ultimately compromised and settled resulting in payment to this estate of $318,723.04 ("Settlement Proceeds"). No evidence was presented by Claimants to establish the source of funds or the claims settled and they are not otherwise identifiable. The parties agree, however, that the Settlement Proceeds are not the rents themselves.

Proofs of claim were filed by Mutual Life in the amount of $475,875.00 and Nations-Bank in the amount of $422,799.66. Each claim was based on the Debtor's non-recourse promissory note ("Note") dated August 1, 1985. This Note was secured by a second priority purchase money deed to secure debt and security agreement[3] (security deed or deed) on the Property, an assignment of lessor's interest in lease (separate rent assignment), and a U.C.C.–1 financing statement executed by the Debtor. These documents were properly recorded in the real estate deed records in DeKalb County, Georgia, where the Property is located. The U.C.C. financing statement was also properly recorded in the personal property records. After the Chapter 11 filing, notices of sequestration of rents under 11 U.S.C. § 546(b) were filed by Mutual Life on January 16, 1990, and by Nations-Bank on October 21, 1991.

The Trustee does not dispute that the note went into default pre-petition upon Debtor's failure to make semi-annual interest payments after December 1988. See Adversary Complaint, Exhibit "5" to Claimants' Brief of March 25, 1992. Further, Claimants did not offer any evidence to establish a pre-petition entry upon the Property, an action in ejectment or for appointment of a receiver, or any other action to subject the Property and rents to their debt.

The Trustee objected to the claims on grounds that they are unsecured, they are based on a non-recourse note, and they are not allowable. He argues that the Settlement Proceeds are not rents or proceeds of

---

Counsel for Dr. Haroutune Mekhjian, debtor's limited partner, and Shake Mekhjian did not file an objection, but filed a statement indicating that they joined in the Trustee's objection. Claimants raised, for the first time, the issue of Dr. Mekhjian's standing in their brief filed March 25, 1992, at 24. The court finds Claimants' contention to be without merit.

2. See Polo Club Apartment Assoc. v. Johnstown Management Company, Southmark Manage-

ment Company, and Southern Ventures, Inc., Adversary Proceeding No. A90–0221–SWC.

3. There is a combined deed to secure debt and security agreement which includes personal property described in the deed, including machinery, equipment, fixtures, contract rights, etc. Claimants are assignees of Walsh Corporation, the original grantee in the combined deed to secure debt and security agreement, separate assignment, and note.

rents, but, even if they are, based on the language of the documents, Claimants were required to take possession of the Property before they were entitled to the rents. Claimants do not contend that they declared a default or took any action to enter and take possession of the Property or collect the rents. Instead, they contend that by recording the security deed and separate assignment in the appropriate county real property records before the commencement of this case, they perfected their security interests in the rents from the Property. They argue that their interests are further protected by virtue of the filing of their Section 546(b) notices before the Trustee's settlement was completed. Finally, they contend that the Settlement Proceeds are subject to their security deed and separate assignment as proceeds of rents or as proceeds of a pre-petition chose in action.

## CONCLUSIONS OF LAW

■ A proof of claim constitutes prima facie evidence of the validity and amount of the claim pursuant to Section 502(a) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 3001(f). Upon objection to a claim, the burden of production rests on the objector to "produce evidence and show facts tending to defeat the claim." 3 *Collier on Bankruptcy* ¶ 502.01 at 502.17–.18 (L. King 15th ed.1992). The ultimate burden of proof, however, remains on Claimants to establish the validity of their claims by a preponderance of the evidence. *See Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692, 701 (5th Cir.1977).[4]

The determination of the substantive rights of these parties is governed by the law of the state in which the underlying real property is located because "[p]roperty interests are created and defined by state law." *Butner v. United States,* 440 U.S.

---

**4.** *See also Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (decisions rendered by former Fifth Circuit prior to October 1, 1981, adopted as precedent by the Eleventh Circuit).

**5.** The court considers *Butner, supra,* to remain controlling authority despite subsequent amend-

48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).[5] The relevant instruments before the court are a security deed containing a rent assignment and a separate rent assignment on the Property located in Georgia. Therefore, Georgia law applies.

■ In Georgia, a security deed conveys legal title to the grantee until the underlying debt secured thereby is paid. "Such conveyance shall be held by the courts to be an absolute conveyance, with the right reserved by the grantor to have the property reconveyed to him upon the repayment of the debt or debts intended to be secured...." O.C.G.A. § 44–14–60. Although a deed to secure debt is considered an absolute conveyance, it does not convey to the grantee an absolute estate. *See Uvalda Naval Stores Co. v. Cullen,* 165 Ga. 115, 117, 139 S.E. 810 (1927). The grantor retains possession and the right of redemption which together comprise an equitable estate in the land, that may be assigned or subjected to debt payment. *Id.; Luther P. Stephens Investment Co. v. Berry Schools,* 188 Ga. 132, 136–37, 3 S.E.2d 68 (1939); *Stevens v. McCurdy,* 124 Ga. 456, 52 S.E. 762 (1905). The retained equitable estate entitles the grantor to possession, an incident of which is the right to use the property and collect the rents. *Few v. Pou,* 32 Ga.App. 620, 124 S.E. 372 (1924); *McCurdy, supra.* Thus, the estate conveyed by a security deed is less than that conveyed by a deed of bargain and sale.

■ Accrued rents are personalty under Georgia law. *Autrey v. Autrey,* 94 Ga. 579, 20 S.E. 431 (1894); *Few v. Pou, supra,* 32 Ga.App. 620, 124 S.E. 372. Article 9 of the Uniform Commercial Code as enacted in Georgia specifically provides, however, that it does not apply to "the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder...." O.C.G.A. § 11–9–104(h). There-

ments to the Bankruptcy Code. *See Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.),* 723 F.2d 441, 443 (5th Cir.) *cert. denied,* 466 U.S. 974, 104 S.Ct. 2350, 80 L.Ed.2d 823 (1984).

fore, a U.C.C. filing concerning an assignment of rents is of no effect. Instead, notice to third parties of the rights conveyed pursuant to a security deed or separate assignment is accomplished by filing and recording these instruments in the appropriate real property records. "A duly filed and recorded deed to secure debt is notice of all the rights which the grantee has thereunder." *Cummings v. Johnson,* 218 Ga. 559, 560, 129 S.E.2d 762 (1963).

The Georgia Supreme Court addressed the rent entitlement issue in *Stevens v. Worrill,* 137 Ga. 255, 73 S.E. 366 (1911) and *Polhill v. Brown,* 84 Ga. 338, 10 S.E. 921 (1889). In these cases the court held that where the grantor, or a successor, continued in possession of lands conveyed by a security deed, the grantor was entitled:

> to collect and use the rents and profits
> ... *even after default in the payment
> of the debt secured by the deed,* until the
> [grantee] holder of the deed should bring
> an action to recover the land, or other
> appropriate proceedings, to subject the
> land and mesne profits [rents] to the
> debt secured by that deed.

*Worrill, supra,* 137 Ga. at 257, 73 S.E. 366 (emphasis supplied). The court focused on possession in determining when the rents may be subjected to the payment of an indebtedness. It held the grantee was not entitled to the rents until he initiated such action. There is no indication in these opinions that the grantees held or asserted a rent assignment.[6]

Similarly, in *Few v. Pou, supra,* 32 Ga. App. 620, 124 S.E. 372, the Georgia Court of Appeals focused on possession to determine entitlement to rents in resolving a dispute between competing claimants. In *Few, supra,* the purchaser of certain real property had assigned his bond for title to an assignee as collateral security with an oral assignment of the right of possession. The assignee took possession and rented the property to a tenant who subsequently was served with a garnishment after the purchaser's default. The court held that:

> [t]he right of the vendee [purchaser] to
> hold and control the possession, with the
> incident rents, is analogous to that of the
> grantor, retaining possession under his
> equity of redemption, as against the
> grantee in a security deed.

32 Ga.App. at 626, 124 S.E. 372 (citing *Stevens, supra,* 137 Ga. at 257, 73 S.E. 366; *Polhill, supra,* 84 Ga. 338, 10 S.E. 921). A valid assignment of the right to possession, even without absolutely transferring the bond for title, entitles the assignee to the right to receive future rents. *Few, supra,* 32 Ga.App. at 627, 124 S.E. 372. The court concluded such right was subject to termination only by an action in ejectment or similar proceeding.

In *Penn Mutual Life Insurance Co. v. Larsen,* 178 Ga. 255, 173 S.E. 125 (1934), the Georgia Supreme Court considered rent entitlement under a recorded security deed that contained a rent assignment. In this case, the grantor executed a security deed to the grantee which was duly recorded. The grantor continued in possession of the property. Thereafter, the grantor conveyed the property subject to the security deed, to a third person who entered into possession and rented the Property to a tenant. This second grantee subsequently assigned the tenant's rent note to his attorney as a fee for suing the first grantee. The attorney took the assignment with knowledge of "the existence and terms of the security deed." 178 Ga. at 256, 173 S.E. 125. After default, the first grantee, eventually sold the property at foreclosure resulting in a deficiency for which he sought recovery of the rents.

In considering the entitlement to rents, the court held that:

> *Where a [security] deed of the character
> mentioned ... contains [such] clauses:*

---

6. Cases that have considered these opinions have concluded, however, that no rent assignment was involved presumably because they are not mentioned. *Padgett v. Butler,* 84 Ga.App. 297, 66 S.E.2d 194 (1951); *Ivor B. Clark Co. v. Hogan,* 296 F.Supp. 398 (S.D.N.Y.1968), *modi-* fied, 296 F.Supp. 407 (S.D.N.Y.1969); *Jones v. United States (In re Jones),* 77 B.R. 981 (Bankr. M.D.Ga.1987); *Acacia Mutual Life Insurance Co. v. Perimeter Park Investment Assocs. (In re Perimeter Park Investment Assocs.),* 1 B.R. 473 (Bankr.N.D.Ga.1979).

(a) 'that in case the debts hereby secured shall not be paid in full when they become due, .. the parties of the second part [grantee] *may enter upon the premises and collect the rents and profits thereof,* may sell the said property at auction,' etc.; (b) *that the relation of the party of the first part [grantor]* 'with the said parties of the second part, during the term of this instrument, shall be that of tenant under the said parties of the second part;* and in case of a sale as hereinbefore provided, or by foreclosure by process of law, the party of the first part or any one claiming under the said party of the first part shall then become and be a tenant or tenant holding over,' etc., the grantor or his grantee holding subject to the security deed, being in possession and receiving rent notes from his tenant cultivating crops on the land, may not be disturbed in his right to the rents by the holder of the security deed before entry upon the land for the purpose of collecting 'the rents and profits thereof.'

178 Ga. at 256, 173 S.E. 125 (emphasis supplied).

Thus, the court applied the same rule as stated in *Worrill, supra,* and *Polhill, supra.* This means that the grantor, or his successor, in possession continued to be entitled and could not be disturbed in his right to collect and use the rents, even after default on the secured debt, until the security deed grantee made an entry upon the property or took other appropriate action to subject the property and rents to his debt. Further, the court held that "before any entry upon the land by the holder of the security deed for the purpose of collecting rents ..." an assignment of a tenant rent note was valid notwithstanding notice to the assignee "of the existence and terms of the security deed." *Id.* The court reached this result in spite of Penn Mutual's argument that it held a lien on the rents. 178 Ga. at 258, 173 S.E. 125. Although the security deed granted a contractual right of entry and right to collect

rents, the court, nevertheless, focused on possession in determining the entitlement to rents.

Federal courts construing Georgia law on rent entitlement have similarly emphasized the significance of possession. In *Ivor B. Clark Co. v. Hogan,* 296 F.Supp. 398 (S.D.N.Y.1968), *modified,* 296 F.Supp. 407 (S.D.N.Y.1969), petitioner, a judgment creditor, sought a contempt order for failure to deliver certain rents to petitioner to be used in partial satisfaction of its judgment.[7] The judgment debtors had previously executed a deed to secure debt and assigned certain rents to a lender. Prior to a default, one of the debtors had been collecting the rents pursuant to a license arrangement with the lender. 296 F.Supp. at 404–406. The court found it necessary to determine the law of rent assignments in Georgia to resolve the parties' relative rights.

The language of the security deed in *Clark, supra,* provided in pertinent part as follows:

' * * * * * (10) The Grantor * * * hereby assigns * * * unto the Grantee * * * all rents from the above described property hereafter accruing *as additional security for the indebtedness* and other items herein secured. * * * The Grantor does appoint the Grantee its attorney to collect said rents with or without suit and apply the same, less expenses of collection to said indebtedness * * * in such a manner as the Grantee may elect; *provided, however, that until there be a default under the terms of this deed, the Grantor may continue to collect and enjoy said rents without accountability to the Grantee* * * *. This assignment of rents and power of attorney * * * in the event of default * * * *may be put into effect* independently of or concurrently with any of said remedies * * *.'

296 F.Supp. at 404 (emphasis in original). Although the assignment provision had

---

**7.** In modifying this order, the court did not alter its reasoning or result other than to determine the extent of rents that the lender was ordered to turn over to the petitioner. 296 F.Supp. at 407.

been drafted as a present transfer with a power of attorney, the court held that under Georgia law the lender did not become entitled to the rents either at the execution of the agreement or upon a "mere existence of a default" by the debtors. *Id.* The conditional language of the assignment (i.e. " 'this assignment ... in the event of default ... may be put into effect ...;"), meant that the lender "must take positive steps to effectuate its assigned rights to the rental monies." *Id.*

The court cited *Penn Mutual, supra,* and *Luther Stephens, supra,* in support of its conclusion that an affirmative act divesting the management and control of the property is necessary to effectuate an assignment of rents provision. *Id.*[8] The security deeds in those cases similarly contained conditional language that allowed the grantee to collect the rents in the event of default by the grantor. Thus in *Clark, supra,* the lender's actual collection of rents upon default and with the consent of the mortgagees pursuant to a power of attorney did not qualify as an adequate act of divestiture [entry] and did not effectuate the rent assignment. 296 F.Supp. at 404–405.

Likewise, in *Acacia Mutual Life Insurance Co. v. Perimeter Park Investment Assocs.* (*In re Perimeter Park Investment Assocs.*), 1 B.R. 473 (Bankr.N.D.Ga.1979), a Chapter XII case, the rent assignment stated that " '[d]efault ... shall terminate the Grantor's right to possession ... *at the option of the Grantee.*' " 1 B.R. at 478. The plaintiff-creditor argued that the security deed provided for an absolute assignment of rents so that upon default all rents received thereafter belonged to it by operation of law and as a matter of contract. 1 B.R. at 474.

The court disagreed, holding that since Georgia is not a "pure title" state, a lender's rights do not attach automatically or immediately upon default. 1 B.R. at 476. Under a security deed, the grantee does not obtain a lien on the property or its income (as under a mortgage), but instead obtains the legal title to the property. Because the grantee retains an equitable estate in the property, however, additional action is required to effectuate a superior claim in the grantee to possession of the rents. The court concluded that under Georgia law, *Penn Mutual, supra,* established the controlling rule that a grantee-assignee out of possession is not presently entitled to receive rents upon the occurrence of a default. *Perimeter Park, supra,* 1 B.R. at 475–476.

Such grantee-assignee obtains a present right to rents, among other things, by gaining actual possession of the property or by assuming the possessory right to receive rents. 1 B.R. at 477, citing Pindar, *Georgia Real Estate Law,* § 21–14.2 (1979 ed.); *accord Clark, supra,* 296 F.Supp. at 405 n. 2. The court in *Perimeter Park, supra,* further held that the lender had no rights to rents accruing before the date of the filing of its complaint for sequestration and turnover of the rents in the bankruptcy court.

Of the cases that have considered the issue of rent assignments under Georgia law, only two cases appear to have reached a different result. They are *Padgett v. Butler,* 84 Ga.App. 297, 66 S.E.2d 194 (1951) and *Jones v. United States* (*In re Jones*), 77 B.R. 981 (Bankr.M.D.Ga.1987). In *Padgett, supra,* the grantor executed a note and security deed which the grantee duly recorded. The debt matured and remained unpaid. At and before his death, the grantor and his wife, the defendant,

---

**8.** In *Luther P. Stephens, supra,* the Georgia Supreme Court held that neither the description of the plaintiff as a tenant in the deed, nor the creditor's consensual receipt of the rents upon default (as directed by the plaintiff), constituted a delivery of possession so as to create a mortgagee in possession relationship, in the absence of an affirmative act evidencing the assertion of control. 188 Ga. at 136–137, 3 S.E.2d 68.

As noted in *Wright v. C & S Family Credit, Inc.* (*In re Wright*), 128 B.R. 838, 844 n. 3 (Bankr.N.D.Ga.1991), "mortgagee in possession" originally described an alternative remedy to foreclosure whereby a creditor takes constructive possession of the underlying property ('entry upon the property') after a default in accordance with his contract. The law provided a debtor in certain instances with a ten year statutory right of redemption.

had been living in a bona fide state of separation. Defendant did not reside on or have possession of the property at or after the grantor's death. Nevertheless, she collected the rents monthly.

The plaintiff grantee brought her action for money had and received to recover the rents. The court held that allegations of default, the unpaid debt and the recorded written rent assignment were sufficient to give defendant constructive notice and to set out a cause of action for the plaintiff grantee's right to the rents. 84 Ga.App. at 299–300, 66 S.E.2d 194. Further, the court found *Polhill, Worrill,* and *Ray v. Boyd,* 96 Ga. 808, 22 S.E. 916 (1895), inapplicable because the security deeds in those cases did not contain assignments. It distinguished *Few* and *Luther P. Stephens, supra,* as involving rent assignments which were not questioned. Apparently, the court did not consider *Penn Mutual, supra.*

In *Jones, supra,* the debtor sought declaratory relief against a creditor seeking rents under a rent assignment in a recorded security deed. The security deed provided in relevant part as follows:

> 'at all times *to secure* ... the performance of every covenant and agreement of Borrower contained herein ..., *Borrower does hereby* grant, bargain, sell, convey, and *assign* unto the Government, with general warranty, the following property ... *together with* all rights, interests, easements, hereditaments and appurtenances thereunto belonging, *the rents,* issues, and profits thereof and revenues and income therefrom....'

77 B.R. at 982 (emphasis in original). The court concluded that the language contained in the deed constituted an unconditional assignment of rents. Based on *Padgett, supra,* which it found to be binding authority, the court held that "no action by the Creditor is required after default to entitle it to any rents identifiable or traceable as such." 77 B.R. at 984.[9]

The *Padgett, supra,* court, however, did not focus upon or discuss the conditional or unconditional nature of the language of the security deed rent assignment. Neither did it place emphasis upon possession as do the previously cited cases. Yet, an examination of the facts in *Padgett, supra,* indicates that it may be in harmony with the earlier Georgia Supreme Court cases. The court of appeals found that the defendant widow did not have possession of the property at or after the grantor's death. The opinion contains no indication that the defendant widow had any rights to the property or the rents. Accordingly, as between the grantor's widow with no right to possession and the security deed grantee holding a recorded security deed with rent assignment, the grantee was entitled to the rents based on her higher title and right to possession. Therefore, the findings of fact and holding in *Padgett, supra,* are consistent with the prior cases which have considered Georgia law. Even if *Padgett, supra,* is construed as applicable to rent assignments whose language is unconditional, it is, nevertheless, distinguishable. The assignment language in Claimants' security deed and separate rent assignment is clearly conditional.

Other courts in similar intermediate title/lien jurisdictions have recognized the unique nature of rents derived from real property and have construed title or entitlement to rents in terms of possession of the property. The special character of rents and their relationship with the underlying property is manifested by the fact that rents "do not spring from the ground. Real estate must be maintained and serviced [by an entity in possession] to produce them...." *In re Prichard Plaza Assocs.,* 84 B.R. 289, 298 (Bankr.D.Mass. 1988); *see also In re Rancourt,* 123 B.R. 143, 148 (Bankr.D.N.H.1991). Absent possession of the realty, a mortgagee holding bare legal title with a separate rent assignment, is not entitled to collect and apply the rents to a debt. 84 B.R. at 295–97. The grantor in possession otherwise remains

---

9. *See also In re Stillbar Construction Co.,* 4 B.C.D. 1110, 1111 (N.D.Ga.1978), a Chapter XII case which is of little or no precedential value.

The creditor had apparently taken sufficient steps to perfect its rights prior to institution of the Chapter XII proceeding.

liable to maintain the property and to generate debt service payments to the grantee though precluded from using his property's income stream. *Prichard Plaza, supra,* 84 B.R. at 298. *See also In re 1301 Connecticut Avenue Assocs.,* 117 B.R. 2 (Bankr. D.D.C.1990), *aff'd,* 126 B.R. 1 (D.D.C.1991). In that case the court quoted the United States Supreme Court as follows:

[p]ossession draws after it the right to receive and apply the income. Without this the [property] could not be operated, and no profit could be made. Mere possession would have been useless to all concerned.

117 B.R. at 7, quoting *Gilman v. Illinois & Mississippi Telegraph Co.,* 91 U.S. 603, 617, 23 L.Ed. 405 (1875). *See also Gordon v. Lewis,* 10 F.Cas. 807 (C.C.D.Me.1835) ("In the view of a court of equity, the rents and profits are incidents de jure to the ownership of the equity of redemption"). As the court in *Prichard Plaza, supra,* further observed, the grantor's right of possession also buffers the grantee from incurring responsibility for and liability in maintaining the subject property. 84 B.R. at 295; compare *Rancourt, supra,* 123 B.R. at 150.

■ Under Georgia law, the equitable estate retained by the grantor in a security deed encompasses possession and the right to the rents and profits of the property. Upon default, the rights of the grantee to possession become greater than those of the grantor, and the grantee is entitled to and may obtain possession of the property as part of his security. *Polhill, supra,* 84 Ga. at 344 10 S.E.2d 921. When such possession is obtained, before foreclosure, whether by consent of the grantor, by an action in ejectment, or other appropriate action, the grantee does not obtain an absolute estate. Rather, the grantee holds the property as security for his debt, just as before recovery of possession. *Id.* The grantee is accountable to the debtor grantor for the rents and profits of the property. Should they prove sufficient to pay off the debt, the debtor grantor can compel the creditor grantee to reconvey the property. *Id.* Likewise, if the property is worth more than the debt owed to the grantee, the grantor may have the property sold for the purpose of paying the debt and any sums realized in excess of the debt must be paid to the grantor. *Id.*

■ Rent assignments in security deeds, or separate rent assignments given in connection with security deeds, are sometimes characterized as absolute or irrevocable. Common sense suggests that if an absolute conveyance by security deed does not convey an absolute estate as to title, an absolute conveyance by assignment of rents arising from the same property does not convey an absolute estate in the rents. In both situations, the grantor retains a right of possession and of redemption which comprise a part of the grantor's equitable estate. Further, a rent assignment conveyed as security for a debt, where the grantor is entitled to the rents until default, is conditional. As with the title conveyed by a security deed, additional affirmative action by the grantee is required before the interest conveyed by the rent assignment can become absolute.

■ Even if a grantor in possession could convey an absolute right to rents, the assignment would not extinguish his equitable estate in the rents. Under an *absolute* assignment, a grantee only obtains a *conditional right* to rents as a type of security and must account to debtor-grantor for any surplus above the amount of his debt. *Travelers Indemnity Co. v. Grant Associates (In re Grant Associates),* 1991 WL 21228, 1991 Lexis 1245 (S.D.N.Y. Feb. 5, 1991). *See also First American Bank of Virginia/WNB Corp. v. Harbour Pointe Limited Partnership (In re Harbour Pointe Ltd. Partnership),* 132 B.R. 501, 503 n. 3 (Bankr.D.D.C.1991); *Rancourt, supra,* 123 B.R. at 147–148; *In re Bethesda Air Rights Ltd. Partnership,* 117 B.R. 202, 209–10 (Bankr.D.Md.1990) (The duty to account for rents evidences a secured obligation and rents are not owned by a mortgagee upon demand.) Compare *In re Willowood East Apartments,* 114 B.R. 138, 142 (Bankr.S.D.Ohio 1990) (Although a debtor could contractually agree to repossession of rents upon default based

on an 'absolute' transfer, once the debt is satisfied, the right to the rents reverts to the debtor, which is in essence a mortgage relationship.) [10] While the grantor's rights of possession and redemption are subject to the rights conveyed in the security deed, the grantee's right to specific accrued and future rents is not matured and is subordinate to those of the grantor in possession.

The court concludes that the *Penn Mutual, supra,* line of cases have established the controlling rule that a security deed grantee out of possession is not presently entitled to receive rents merely upon the occurrence or existence of a default. The grantor being in possession and receiving rents may not be disturbed in his right to the rents by the security deed grantee until he takes possession or takes other appropriate action to subject the land and rents to the debt. This means that affirmative action or positive steps must be taken by the security deed grantee before there is a present right to receive rents under such written rent assignment. Claimants' failure to take such action precludes their claim to any rents or proceeds of rents collected by the grantor before such action is taken. *Penn Mutual, supra; Clark, supra;* and *Perimeter Park, supra.*

■ Even if the *Penn Mutual, supra,* line of cases are construed as applicable to rent assignments whose language is conditional, they are, nevertheless, applicable to this case. The assignment language in Claimants' security deed and separate rent assignment is clearly conditional.[11] In fact, it is very similar to the language contained in the security deeds and rent assignments in *Penn Mutual, supra, Clark, supra,* and *Perimeter Park, supra.*

■ Claimants contend that Section 546(b) recognizes a previously perfected security interest but to the extent state law requires additional action, allows post-petition perfection through the filing of an appropriate notice. *See* Claimants' Response filed January 27, 1992 at 7–10; Amended Brief filed March 25, 1992 at 10–12. They maintain that no additional acts were required to collect rents post-petition based on the conditional nature of their security deed. In response, the Trustee argues that even if post-petition perfection was allowable by filing a notice under Section 546(b), prior to such notice there is no perfected interest in rents, and such perfection, in any event, does not relate back to a pre-petition recording date. *See* Trustee's Reply, filed March 9, 1992 at 6–7.

Several competing lines of authority have developed concerning whether Section 546(b) provides a means for post-petition perfection of a recorded rent assignment.[12]

10. Compare *In re Club Tower,* Case No. 91–71169–HR (Bankr.N.D.Ga. July 15, 1991); *Clark, supra,* 296 F.Supp. 407; *Balcor Pension Investors v. Wiston XXIV Limited Partnership (In re Wiston XXIV Ltd. Partnership),* 147 B.R. 575 (D.Kan.1992).

11. The relevant language of the separate assignment is as follows:

> 4. Upon the occurrence of ... an event of default ... *then and thereupon Lender may:* (a) declare the total indebtedness due by Borrower to Lender, secured by this assignment, immediately due and payable; (b) *proceed to enter upon, take possession of, and operate the Premises under this assignment without becoming a mortgagee in possession....*

The relevant language in the Security Deed is as follows:

> Should default occur in the payment of any indebtedness secured hereby ... then and in that event Grantee shall be at liberty immediately to apply for and shall be entitled ... to the appointment of a receiver to collect the rents and profits of the Property....

> Grantor hereby sells, assigns and transfers to Grantee all of the rent which shall hereafter become due or be paid on the Property; but Grantee agrees that this rent assignment will not be enforced so long as no default on the part of Grantor exists ... Grantee waives its rights to and interest in said rents, but upon any default ... Grantor agrees that Grantee *may enter upon said property and collect the rents therefrom....*

Claimant's Amended Brief, March 25, 1992, Exhibits 2 and 3 (emphasis supplied).

12. Section 546(b) provides as follows:

> [t]he rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law *requires seizure* of such property or commencement of an action to accomplish such perfection, *and such property has not been seized or such action has not*

*See e.g. Sears Savings Bank v. Tucson Industrial Partners (In re Tucson Industrial Partners)*, 129 B.R. 614, 620–24 (9th Cir. BAP 1991). There does not appear to be a clear majority view among the cases. The various approaches taken by courts may be generally summarized as follows.

(1) Section 546(b) does not permit the post-petition perfection of a pre-petition rent assignment. *See In re Multi–Group III Ltd. Partnership*, 99 B.R. 5, 9–11 (Bankr.D.Ariz.1989).[13] Recognition of an interest in rents post-petition, pursuant to Section 552(b), is premised on the existence of a right to rents prior to commencement of the case. Treating rents as cash collateral under Section 363(a) when state law requirements have not been satisfied improperly grants automatic perfection effect under Section 552(b) and precludes operation of the automatic stay. *See also In re Wynnewood House Assocs.*, 121 B.R. 716, 724–27 (Bankr.E.D.Pa.1990).

(2) Post-petition notice under Section 546(b) may be used to perfect a pre-petition rent assignment. Although acts to obtain possession are stayed, notice under this provision amounts to a constructive equivalent of such act if it is shown that outside bankruptcy the creditor would have been entitled to such relief provided 'relation back' effect exists under applicable state law. The security interest is considered 'perfected' as of the pre-petition recording date for purposes of Section 544, but enforceable only with respect to rents after the filing of the notice. *See e.g. Casbeer v. State Federal Sav. & Loan Ass'n (In re Casbeer)*, 793 F.2d 1436 (5th Cir.1986); *Virginia Beach Federal Sav. & Loan Ass'n v. Wood*, 97 B.R. 71 (N.D.Okla.1988), *aff'd*, 901 F.2d 849, 853 (10th Cir.1990);

*Saline State Bank v. Mahloch*, 834 F.2d 690, 695–96 (8th Cir.1987); *Home Sav. Ass'n of Kansas City v. Woodstock Assocs. I (In re Woodstock Assocs. I)*, 120 B.R. 436, 447–48 (Bankr.N.D.Ill.1990); *In re National Real Estate Ltd. Partnership—II*, 104 B.R. 968 (Bankr.E.D.Wis.1989).

(3) Section 546(b) is not relevant because once recorded, a security interest in rents is effective against and notice to all persons as to the existence of the interest, regardless of whether the creditor is presently entitled to receive the rents, and such right is similarly recognized pursuant to Section 552(b). *See e.g. Vienna Park Properties v. United Postal Sav. Ass'n (In re Vienna Park Properties)*, 976 F.2d 106 (2nd Cir.1992); *Tucson Partners, supra*, 129 B.R. 614, 620, 624–25; *In re Park at Dash Point L.P.*, 121 B.R. 850 (Bankr. W.D.Wash.1990); *Rancourt, supra*, 123 B.R. at 148–49.[14]

Section 546(b) is not a proper basis for effectuating a creditor's present entitlement to receive rents under a rent assignment. *See generally In re Raleigh/Spring Forest Apartment Associates*, 118 B.R. 42, 46 (Bankr.E.D.N.C.1990) (properly filed assignment may be perfected though not presently enforceable, Section 546(b) inapplicable because seizure not required for perfection of rent assignment). This provision addresses perfection of a security interest as distinguished from a present entitlement to rents thereunder. *See Park at Dash Point, supra*, 121 B.R. at 859–61; *Prichard Plaza, supra*, 84 B.R. at 301; *accord Vienna Park, supra*, 976 F.2d at 114. The purpose of Section 546(b) is described as follows:

*been commenced before* the date of filing the petition, such interest in such property *shall be perfected by notice within the time fixed by such law* for such seizure or commencement. (Emphasis supplied.)

13. Use of the term "perfection" to describe when sufficient acts have been taken to provide constructive notice to all persons as to the existence of all rights created under a security instrument tends to create more ambiguity in analyzing rent entitlement issues. *See generally In re Prichard Plaza Assocs.*, 84 B.R. 289, 298 (Bankr.

D.Mass.1988); *In re Rancourt*, 123 B.R. 143, 145–46 (Bankr.D.N.H.1991); *In re KNM Roswell Ltd Partnership*, 126 B.R. 548, 552–556 (Bankr. N.D.Ill.1991).

14. The dissent in *Tucson Partners, supra*, argued that although the security interest was perfected prepetition, it did not constitute a present right to receive rents. 129 B.R. at 625–26. Such a right must be activated by seeking sequestration and would be effective only with regard to future rents.

... Congress did not intend Section 546(b) as a vehicle for post-petition perfection of a security interest in rents. Its primary purpose 'is to protect, in spite of the surprise intervention of a bankruptcy petition, those whom state law protects by allowing them to perfect their liens or interests as of an effective date that is earlier than the date of perfection.' HR Rep. No. 95–595, 95th Cong., 1st Sess. 371 (1977); S Rep. No. 95–989, 95th Cong., 2d Sess. 86 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5872, 6327.

*Multi–Group III, supra,* 99 B.R. at 9. Rent assignees are not within this statutorily designated class. The lien interests contemplated in this statute are those with delayed perfection rights such as mechanics and materialmen, or those provided in Article 9 of the Uniform Commercial Code. *See also In re TM Carlton House Partners, Ltd.,* 91 B.R. 349, 356 (Bankr.E.D.Pa. 1988). Compare *Harbour Pointe, supra,* 132 B.R. at 503–04. (Once bank established right to appointment of a receiver, it was entitled under Section 546(b) to file a notice of perfection as to future rents.)

*Butner, supra,* sets forth the guiding principles once a bankruptcy intervenes. 440 U.S. at 55–57, 99 S.Ct. at 918–19. The Court held that:

Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' [cite omitted].

\* \* \* \* \* \*

It does not follow ... that all mortgages be afforded an automatic security interest in rents and profits when state law would deny such an automatic benefit and require the mortgagee to take some affirmative action before his rights are recognized. What does follow is that the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued.

*Butner, supra,* 440 U.S. at 55, 56, 99 S.Ct. at 918, 919. This means that property rights (including security interests) are determined by reference to state law. Second, the rents are not 'automatically' the property of the creditor upon a bankruptcy filing. Permitting a creditor a present entitlement to rents simply because of a bankruptcy filing, in the absence of the affirmative acts required by state law, would grant the creditor a windfall merely as a happenstance of the bankruptcy filing. Third, a creditor may request appropriate relief just as in a nonbankruptcy forum.

■ While the bankruptcy automatic stay prohibits any action against property of the estate, the creditor is not, however, without remedy. The same protection afforded by state law is available in bankruptcy. For example, the creditor can initiate action before the bankruptcy court by motion for sequestration or to limit or prohibit use of cash collateral to complete his entitlement to the rents. The court would then consider the relief requested balanced against the federal interests expressed in the Bankruptcy Code. In this circumstance, the court would properly consider and balance state law rights and federal bankruptcy law principles such as prospects of reorganization, adequate protection, right to cure defaults, etc. *Butner, supra.* *See Raleigh/Spring, supra,* 118 B.R. at 45–46.[15] *See also In re Stoneridge*

---

15. Compare *Vienna Park, supra,* wherein the court observed that although a grantee has a recognized interest in rents from the commencement of the case pursuant to Sections 552(b) and 363(a), the court may alter this right pursuant to the discretionary equity power in Section 552(b). 976 F.2d at 113. *See also In re Stone Ridge Assocs.,* 142 B.R. 967 (Bankr.D.Kan. 1992) (Although interest in rents not enforced prepetition is subject to lien avoidance provi-

*Apartments,* 119 B.R. 706 (Bankr.W.D.Mo. 1990). (Section 552(b) allows rent assignee with recorded assignment and proof of default to petition for termination of debtor's unrestricted use of rents.)

Claimants' interests were created upon the execution of their security deed and rent assignment. The proper recording of these instruments prior to the commencement of the case, gives constructive notice to the world of all rights obtained thereunder. *See Cummings, supra,* 218 Ga. 559. Although their interests were duly recorded, Claimants were not yet entitled to collect and subject the rents to the payment of their claims.[16]

Under Claimants' documents, the parties agreed that the grantor Debtor would remain in possession of the Property and enjoy an exclusive right to use the rents. As noted in *Raleigh/Spring Forest, supra,* 118 B.R. 42, 44, a rent assignment for security by which the debtor is entitled to the rents until default, is conditional and not absolute. Moreover, even upon default, the grantee creditors' right to receive rents is incomplete until affirmative action is taken to realize on the contractual grant by taking possession of the property or taking affirmative action tantamount to possession manifesting a present intent to subject the Property and rents to their claim. *See Penn Mutual, supra; Worrill, supra; Polhill, supra;* and *Perimeter Park, supra.* Before that step is taken, the debtor grantor is entitled to receive the rents. *See McCurdy, supra.*

■ Pursuant to the foregoing authority, the court is persuaded that, under the law of rent assignments in Georgia, a security deed grantee has no right to rents until this additional action is taken. The intervention of a bankruptcy filing does not afford Claimants an automatic entitlement to rents and does not obviate the state law requirement of additional affirmative ac-

tion by Claimants before their rights will be recognized. Rents collected prior to such action belong to the grantor debtor which he is free to use in the ordinary course of conducting his daily affairs. This is true whether or not the grantee's actions occurred pre-petition or post-petition.

■ The question arises as to entitlement to rents on hand at the time the security deed grantee takes the requisite action under state law. The case law does not clearly answer the question. A strict interpretation of Georgia's rent assignment law would hold that the grantor debtor would be entitled to all rents collected prior to the grantee creditor's action, and the grantee creditor would be entitled to all future rents. The court is persuaded that, absent bankruptcy, the Georgia courts would conclude that, where the requisite creditor action has occurred, the grantee creditor is entitled to all rents on hand and all future rents until its debt is satisfied. Therefore, this court concludes that when the requisite additional grantee action has occurred, the grantee creditor would have a matured claim to rents on hand and future rents. This result accommodates both the requirement of the Georgia law of rent assignments and the federal interests of reorganization and "fresh start" provided in the Bankruptcy Code. Further, it effectuates the *Butner, supra,* mandate of uniformity of protection in bankruptcy as would be available under state law if no bankruptcy had been filed, except where federal interests require otherwise.

■ In this case, Claimants each filed a different pleading by which they attempted to assert a superior claim to rents. The first pleading, filed January 16, 1990, is a notice of sequestration and perfection combined with a motion to prohibit use of cash collateral. To the extent this

sions, integrity of security interest nonetheless acknowledged because debtor lacked reasonable likelihood of reorganization); and *Rancourt, supra,* 123 B.R. at 144–151.

**16.** As observed in *KNM Roswell Limited Partnership, supra,* 126 B.R. at 553–554, the nature of a rent assignment is such that the interest created thereunder remains paramount regardless of who else may assert a proper claim to rents during the time before the creditor acts to obtain a present entitlement to specific rents pursuant to his assignment.

pleading constitutes a section 546(b) notice, it is of no effect. As a motion to prohibit use of cash collateral, however, it is sufficient to accomplish the necessary act to effectuate an entitlement to rents, although more detail would be appropriate. The second notice, filed October 21, 1991, is insufficient to serve as an appropriately equivalent act necessary to effectuate an entitlement to rents. This is a mere notice which seeks no specific relief. *See generally Village Properties, supra,* 723 F.2d at 446; *accord Casbeer, supra,* 793 F.2d at 1443. Nonetheless, there are no funds upon which the first pleading can operate because all rents on hand or that were collected after the date of the motion were used to pay operating costs of the Property or were paid to RTC. Therefore, Claimants have presented no evidence to establish the existence of rents or rent proceeds which secure their claims.

■ Claimants next assert that they are entitled to the Settlement Proceeds as proceeds of a pre-petition chose in action. They reason that the management company's conversion of rents created a pre-petition chose in action which is encompassed within their security interests. The parties agree the rents themselves are not at issue here. *See* Brief of March 25, 1992, at 11. Nevertheless, the parties argue throughout their several briefs that the subject funds are proceeds of rents or proceeds of a chose in action.

The difficulty with Claimants' position is that they have presented no evidence to identify or trace the rents or their proceeds. At most, Claimants point to the allegations of the Trustee's adversary complaint as amended. Based on the reasons set forth below, the court concludes that it is unnecessary to determine whether Claimants' documents are broad enough to include proceeds of such chose in action. Even if the court concluded that Claimants' agreements were sufficiently broad to encompass a conversion claim, however, they have presented no evidence to show which of the multiple claims were settled by the Trustee, or that those settled are identifiable and traceable back to the original rents claimed. Further, Claimants presented no evidence to establish a proper allocation of the Settlement Proceeds to each of the claims which the Trustee settled. Absent such evidence, Claimants' proof fails. For these and other reasons set forth herein, the court concludes that Claimants have not carried their burden of proof and the claims must be disallowed.

■ Claimants also contend that the Settlement Proceeds were intended to be recovered on their behalf, and the Trustee cannot now argue that they are not entitled to those proceeds. (Amended Brief, March 25, 1992 at 22). Claimants assert two theories for relief: (1) the Trustee should be equitably estopped from arguing a position inconsistent from the averments alleged in paragraphs 14, 23, and 28 of the adversary complaint; and (2) a constructive trust should be imposed in order to insure that the funds go to the party with the stronger equitable claim.

■ Under Georgia law, the elements of equitable estoppel include false representation with knowledge by the Trustee or Debtor and reliance by the Claimants to their detriment. *See Bell v. Studdard,* 220 Ga. 756, 760, 141 S.E.2d 536 (1965); *American Viking Contractors, Inc. v. Scribner Equipment Co., Inc.,* 745 F.2d 1365, 1372 (11th Cir.1984). Claimants have again, however, failed to provide any evidence from which the court could conclude that they relied upon some conduct of the Trustee or the Debtor to their detriment. The averments in paragraphs 14, 23 and 28 of the adversary complaint are not sufficient to support or substantiate a claim for equitable estoppel.

As for the theory of constructive trusts, Claimants have not shown that the limited partner would, in fact, profit from disallowing these claims. Moreover, there is no evidence to show Debtor's assets, liabilities, any possible surplus, or similar matters. Claimants have simply presented no evidence which would support the imposition of a constructive trust.

■ Finally, Mutual Life and Nations-Bank argue that their claims are recourse

regarding all assets of the estate pursuant to 11 U.S.C. § 1111(b). (Claimants' Response to Trustee's Objection, January 27, 1992 at 14–16). Claimants do not dispute that their security documents are non-recourse and that accordingly, they may only satisfy their claims against the Debtor by recourse to the property specified in those documents. Alternatively, Claimants argue that, even if the statute does not so provide, their non-recourse claims should be allowed as general unsecured claims under Section 1111(b) based upon analogies to other exceptions to 11 U.S.C. § 103(f) or, finally, to other equitable principles. (Claimants' Amended Brief, March 25, 1992 at 17–25).

The gravamen of this argument is that because the Debtor invoked the jurisdiction of the bankruptcy court in the context of chapter 11, Claimants should be to able to rely on that original filing choice and all its attendant provisions. Further, in order to be consistent with other sections of chapter 11, their claims should be carried over upon conversion from a chapter 11 case to a chapter 7 case. The Trustee vigorously opposes this position. He argues that the security documents contain non-recourse language (Trustee's Memorandum supporting objection to proof of claim, November 13, 1991 at 3–4), and that Section 1111(b) is simply inapplicable to chapter 7 cases. (Trustee's Reply Brief at 7–10).

The court agrees with the Trustee. Section 103 provides:

> [e]xcept as provided in section 901 of this title, subchapters I, II, and III of Chapter 11 of this title apply only in a case under such chapter.

As Claimants recognize (Amended Brief, March 25, 1992 at 17), Section 103 limits the applicability of, among other things, Section 1111 to cases under chapter 11. The present case has long since been converted to a case under chapter 7. Accordingly, it is no longer governed by the provisions of Section 1111(b). Moreover, Section 348 provides:

> [c]onversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, ... does *not* effect a change in the date of the filing of the petition.

11 U.S.C. § 348(a). The conversion of a case from chapter 11 to chapter 7 in effect relates back to the filing of the original petition in the chapter 11 case, without regard to the provisions of Section 1111(b). Upon conversion, the administration of the case, including allowance of claims, is governed by the provisions of the Bankruptcy Code applicable to chapter 7 cases. Section 1111(b) is simply not applicable in the chapter 7 context and there is no equivalent provision in chapter 7. *See In re Ionosphere Clubs, Inc.*, 134 B.R. 515 (Bankr. S.D.N.Y.1991) (appeal filed December 2, 1991, District Court No. 91–CIV–8457–MJC) (similar reasoning as to Section 1114(e) rejected). This court likewise concludes that Claimants' arguments are without merit.

Claimants next argue that other exceptions to Section 103(f) have been recognized. Under Section 1111(a) when a claim included in the debtor's schedules in a chapter 11 case is not disputed, contingent or unliquidated and is therefore deemed filed, a claimant need not file a separate claim if the case is converted to a chapter 7 case. *In re Crouthamel Potato Chip Co.*, 786 F.2d 141 (3rd Cir.1986). In *Lisk Electric, Inc. v. Brandt (In re Fesco Plastics Corp., Inc.)*, 908 F.2d 240, 242–43 (7th Cir. 1990), the Seventh Circuit adopted the reasoning in *Crouthamel*. However, as that court noted, Federal Rule of Bankruptcy Procedure 1019(4) was amended in 1987, effective in cases filed after August 1987, to treat claims "actually" filed in a chapter 11 case as being filed in the chapter 7 case upon conversion. *See* Fed.R.Bankr.P. 1019(3). *See also* 8 *Collier on Bankruptcy* ¶ 1019.07 (L. King, 15th ed. 1992). As noted, Debtor's Chapter 11 case was commenced in 1989 and is governed by the amended rule.

By analogy Claimants would have this court conclude that claims allowable under Section 1111(b) should be preserved when the case is converted to a case under chap-

ter 7, as in the "deemed filed" instance. This analogy strains logic. Although *Crouthamel, supra,* is no longer good law, it is distinguishable on its facts. The claims in *Crouthamel* were wage claims by union members which are general recourse claims. Normally, such claims are allowable in a chapter 7 case. Assuming that the instant claims were "deemed filed," as under *Crouthamel,* they would nonetheless be subject to objection by the Trustee and disallowable as non-recourse debt in a chapter 7 case. Fed.R.Bankr.P. 3007. Thus, Claimants' analogy does not advance their cause.

At the hearing of February 6, 1992, Claimants discussed recourse/non-recourse documents and the applicability of Section 1111(b) to chapter 7 cases. (Transcript, pp. 29–35; 45–49; 65; 68). At that time, Claimants posited that because this case was filed as a Chapter 11 case, and only later converted to a Chapter 7 case, Section 1111(b) should remain applicable to their claims. During the hearing, the court expressed serious reservations about this line of argument. (Transcript, pp. 65–66). Claimants could not provide any cases on point. (Transcript, pp. 45–46). Nevertheless, they have persisted in arguing this point without providing the court with any persuasive authority substantiating their position. (Amended Brief, March 25, 1992 at 17–20). Section 103(f) is not ambiguous. Claimants have simply ignored the plain language of the statute. The court finds and concludes that this argument is completely frivolous and without merit.

### CONCLUSION

Based upon the foregoing reasoning and citation of authority, the Trustee's Objection to the Claims of Mutual Life and NationsBank is SUSTAINED and the claims of Mutual Life and NationsBank as filed in this case are DISALLOWED.

The clerk is directed to serve a copy of this Order upon the Debtor, counsel for Debtor, counsel for Trustee, counsel for Mutual Life, counsel for NationsBank, and counsel for Dr. Haroutune Mekhjian.

IT IS SO ORDERED.